Argued and submitted July 15, affirmed October 5, 1988

McPIKE,
*Appellant,*

*v.*

ENCISO'S COCINA MEJICANA, INC., et al,
*Defendants,*

*and*

DEAN DISTRIBUTORS, INC., et al,
*Respondents.*

(85-1055; CA A44381)

762 P2d 315

Rick T. Haselton, Portland, argued the cause for appellant. With him on the briefs was Lindsay, Hart, Neil & Weigler, Portland.

William E. Flinn, Eugene, argued the cause for respondent Dean Distributors, Inc. With him on the brief were Timothy F. Brewer and Flinn, Brown & Roseta, Eugene.

Thomas M. Christ, Portland, argued the cause for respondent National Institutional Food Distributor Associates, Inc. With him on the brief was Mitchell, Lang & Smith, Portland.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Deits, Judge.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff is the personal representive of the estate of Medaya McPike, a 10-year old girl who became seriously ill shortly after eating a guacamole tostado at the defendant restaurant. She died five days later. The guacamole had been treated with a sodium bisulfite preparation manufactured and distributed by defendants Dean Distributors, Inc. and National Institutional Food Distributors Associates, Inc. (NIFDA).[1] Plaintiff alleged that the decedent, who suffered from asthma, died as the result of an allergic reaction to the sulfite. She contended that defendants were negligent and that their product was unreasonably dangerous, because it did not contain warnings on the package to alert the restaurant personnel that some asthmatic persons are highly sensitive to sulfites and that sulfites may be dangerous if used in excessive amounts or concentrations. The jury found for defendants, and plaintiff appeals from the resulting judgment. We affirm.

Plaintiff assigns four errors. Because we conclude that her first and third fail for the same reason, we will discuss them together. The first assignment challenges the trial court's granting of defendants' motion to exclude evidence that, after the child's death, the Oregon legislature, the Oregon Health Division and the federal Food and Drug Administration took action to ban or restrict the use of sulfites in fresh foods. *See* ORS 616.073; 21 CFR §§ 182.3739, 182.3766, 182.3798, 182.3862. Plaintiff's third assignment is that the court erred by excluding evidence that, after the child died, Dean added certain warnings to its sulfite containers and NIFDA stopped distributing sulfites.

■ Plaintiff does not appear to contend that the exclusion of the evidence was error in connection with her negligence claims, and we agree that it was not. The governmental actions were not relevant to defendants' culpability before the event, and defendants' subsequent remedial actions were inadmissible to prove their negligence. OEC 407. However,

---

[1] Dean distributed the product under a licensing agreement between it and NIFDA and they are the only defendants who remain in the case. Our use of the term "defendants" in the balance of this opinion refers to them. Although the two defendants have appeared separately, we will not differentiate between them in describing the arguments which either makes.

plaintiff contends that the evidence should have been admitted in support of her strict products liability claims. *See Krause v. American Aerolights,* 88 Or App 383, 745 P2d 796 (1987), *rev allowed* 305 Or 102 (1988). Defendants respond, *inter alia,* that, in products liability cases where the alleged unreasonable danger is a failure to warn, the standard of liability is essentially the same as for a negligent failure to warn and that only evidence which pertains to what the defendants knew or should have known at or before the time of the injurious activity is relevant. Defendants rely on *Restatement (Second) Torts,* § 402A, *comment j* (1965), which states, in relevant part:

> "Where, however, the product contains an ingredient to which a substantial number of the population are allergic, and the ingredient is one whose danger is not generally known, or if known is one which the consumer would reasonably not expect to find in the product, the seller is required to give warning against it, *if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the presence of the ingredient and the danger."* (Emphasis supplied.)

Defendants acknowledge that, in *Phillips v. Kimwood Machine Co.,* 269 Or 485, 525 P2d 1033 (1974), the Supreme Court rejected the negligence standard:

> "In a strict liability case we are talking about the condition (dangerousness) of an article which is sold without any warning, while in negligence we are talking about the reasonableness of the manufacturer's actions in selling the article without a warning. The article can have a degree of dangerousness because of a lack of warning which the law of strict liability will not tolerate even though the actions of the seller were entirely reasonable in selling the article without a warning considering what he knew or should have known at the time he sold it." 269 Or at 498.

Defendants contend, however, that *Phillips* was legislatively overruled by the enactment of ORS 30.920(3), which provides that the substantive strict liability provisions of ORS 30.920(1) and (2) "shall be construed in accordance with the Restatement (Second) of Torts sec. 402A, Comments a to m (1965)." That statute has the effect, according to defendants, of making the emphasized language in our quotation of *comment j* the law of Oregon.

■■ We need not decide whether defendants' legal theory

is correct, because, correct or not, the jury was instructed in accordance with that theory, and plaintiff does not assign error to the giving of the instruction.[2] The court charged the jurors that, to find a product "unreasonably dangerous * * * because of the absence of instructions or warnings," they had to find, *inter alia,* that

> "the maker or seller of the product could give instructions or warnings for the avoidance of such danger because, as a person in the business of making or selling the product, the maker or seller either knows or by application of reasonably developed human skills and foresight should know of such danger."

■■. Under that unchallenged instruction, the jury could not have considered the evidence which plaintiff asserts was wrongly excluded in determining what defendants knew or should have known when they produced or distributed the product. The subsequent federal and state regulatory actions are not probative of defendants' before-the-fact knowledge. Similarly, evidence of Dean's subsequent addition of container warnings and NIFDA's subsequent discontinuance of sulfite distribution is either totally irrelevant to the care that defendants exercised before the injury or is so marginally relevant that the trial court was well within its discretion in excluding the evidence for the purpose of proving what defendants did or should know. OEC 403;[3] *Krause v. American Aerolights, supra,* 88 Or App at 388. Consequently, plaintiff's first and third assignments present the non-issue of whether evidence should have been admitted which the jury could not have considered consistently with instructions to which plaintiff does not now object.[4]

---

[2] Plaintiff did take exceptions below to that and related instructions, but does not assign error to them on appeal. In her arguments to us, plaintiff appears to express disagreement with the correctness or applicability of the legal theory which defendants espouse and which the court adopted in its instruction. In the absence of an assignment challenging it, however, we cannot hold that the instruction was erroneous, and we must conclude that the jury had to and did follow it.

[3] The court based its exclusion of the state and federal regulatory evidence on OEC 403.

[4] Plaintiff argues, alternatively, that defendants "opened the door" for her introduction of evidence of the current regulations, because certain phrasing in Dean's attorney's opening argument, in his examination of a witness and in the witness' responses seemed to relate to the use of sulfites in the food industry at the time of trial. The judge gave a curative instruction immediately after the testimony, and another in his closing instructions, that the jurors were to disregard any evidence concerning the use of sulfites at the present time and were to limit their consideration to evidence

■ In her second assignment, plaintiff ascribes error to the court's exclusion of the restaurant owner's proffered testimony that he discontinued the use of sulfites at the restaurant after he learned of the child's death and the possible connection. The apparent basis for the trial court's ruling is that evidence of what the owner did in response to a customer's death is not probative of what he would have done in response to a package warning about potential hazards to the health of a segment of the general population. Plaintiff's explanations of the intended purpose of the evidence differ in her opening and reply briefs. In the former, she suggests that the evidence was essentially rehabilitative and was designed to respond to defendants' impeachment of the owner and their assaults on his credibility. In her reply brief, plaintiff explains, instead:

> "The 'improper rehabilitation' argument (advanced by respondent Dean) is a red herring. The proffered testimony was developed during plaintiff's counsel's *direct* examination of Mr. Enciso—before defendants ever attacked his credibility on cross-examination—and, thus, could not have been offered to 'rehabilitate' Mr. Enciso. In fact, the testimony was elicited to corroborate Mr. Enciso's prior testimony on direct that had he been warned sulfites constituted a health hazard to his customers, he would have discontinued their use in favor of some alternative such as lemon juice." (Emphasis plaintiff's.)

In either event, there was no reversible error. Defendants' impeachment took the form of very weak evidence that the owner and his employes did not look at or follow package directions and evidence that the guacamole which the decedent ate contained much more than the amount of sulfites which the owner had testified that he used in his standard recipe. What he did in response to the girl's death is in no way responsive to that impeachment or the bases on which his credibility was challenged.

■ Plaintiff is also not assisted by her argument that

---

relating to sulfite use during and before February, 1985. We do not agree with plaintiff that the curative instructions were insufficient to prevent the jurors from misapplying the evidence. Plaintiff also appears to argue that the evidence of the governmental actions was relevant to whether sulfite ingestion caused the child's death. Its relevance to that fact is so slight—and there was so much more direct evidence which was adduced regarding the fact—that the trial court manifestly did not abuse its discretion by excluding the regulatory actions as evidence of causation.

evidence of the owner's post-injury cessation of sulfite use was admissible to "corroborate" his testimony that, if he had received a warning that the product could be a health hazard to his patrons, he "would disband it from the kitchen immediately" and would use lemon juice instead of sulfites. Plaintiff equates the owner's response to a customer's death after eating his food with how he would have responded to printed warnings that the product could pose a health hazard to some persons. We agree with defendants and the trial court that those two stimuli are so different that the owner's reaction to the first bears little or no predictive similarity to how he would have responded to the other. The owner testified unequivocally that he would have desisted from sulfite use if he had received advance warnings. If the excluded evidence had any potential for bolstering that testimony, it was so minimal that any error in the court's refusal to admit it was clearly harmless.[5]

■　　Plaintiff's final assignment challenges the court's refusal to give her requested instruction that the "law assumes that where a warning is given, it will be heeded." She relies on the statement in *comment j* to section 402A of the *Restatement:*

> "Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous."

Assuming, without deciding, that all of the other steps in plaintiff's analysis are correct, she was nevertheless not entitled to have the jury instructed about the existence of the putative presumption. *Riley Hill General Contractor v. Tandy Corp.,* 303 Or 390, 408, n 9, 737 P2d 595 (1987).

　　Affirmed.

---

[5] Apparently, the trial court excluded the evidence as being wholly irrelevant, rather than balancing its probative value against exclusionary factors pursuant to OEC 403.