Argued and submitted July 22, affirmed September 14, 1994

Anthony Jules LUTZ,
Personal Representative of the
Estate of Dalton Dean Lutz,
*Respondent,*

*v.*

STATE OF OREGON,
by and through
William Carey, Director of
Children's Services Division,
*Appellant,*

*and*

DIRECTOR, LINCOLN COUNTY
HUMAN SERVICES DEPARTMENT,
by and through
Lincoln County Mental Health,
*Defendant.*

(91-2200; CA A80930)

881 P2d 171

Robert M. Atkinson, Assistant Attorney General, argued the cause for appellant. With him on the briefs were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Michael H. Bloom argued the cause and filed the brief for respondent.

Before Warren, Presiding Judge, and Edmonds and Haselton, Judges.

EDMONDS, J.

Haselton, J., concurring.

## EDMONDS, J.

Defendant State of Oregon[1] appeals from a judgment in favor of plaintiff in this negligence action arising out of the death of plaintiff's decedent. Defendant assigns error to evidentiary rulings by the court that limited the use of a medication chart offered into evidence by defendant, OEC 105, and that sustained plaintiff's objection to evidence concerning plaintiff's disposition of the decedent's remains. OEC 403. We affirm.

Plaintiff and his wife were married in 1988. The wife had been diagnosed with chronic paranoid schizophrenia and had attempted suicide at least three times before 1983. In October, 1988, plaintiff's and the wife's son was born. By July, 1989, the wife's mental health had deteriorated, and plaintiff and the wife had separated. On February 7, 1990, Children's Services Division (CSD) took the son into custody after it was discovered that he had medication prescribed to the wife in his blood system. In an effort to regain the legal and physical custody of the son, the wife agreed with CSD to:

> "1)   Attend and participate in weekly treatment at Lincoln County Mental Health, following my therapists' recommendations and taking medications as prescribed.
>
> "2)   Cooperate and meet in my home weekly with the CSD Homemaker. Following the Homemaker's assessment, I will work with the Homemaker on the areas identified as needing improvement.
>
> "3)   Maintain weekly contact with my worker by telephone and meet twice a month to discuss my case progress."

On March 6, 1990, Dr. Kaczmarek, wife's psychiatrist, sent a letter discussing the wife's psychiatric condition to her attorney, who apparently forwarded the letter to CSD. The letter reads, in part,

> "I do not believe that [the wife's] schizophrenia renders her unfit to be a mother. However, the symptoms she is prone to when off medication would preclude safe and effective parenting. I believe that she should be given another chance to raise her son and believe that she will be able to do this as

---

[1] Plaintiff brought this action against the State of Oregon and Lincoln County Human Services Department. The State of Oregon is the only defendant on appeal.

long as she remains in contact with this clinic and is compliant with her medication. I feel that weekly visits will be sufficient for us to be aware of any potential declines in her functioning and give us time to take appropriate steps. I believe that [the wife] has recovered fully from her relapse and would hope that this case could be resolved in a timely fashion."

Based in large part on the letter, CSD returned the physical custody of the son to the wife on March 15, 1990. On or about June 17, 1990, the wife shot and killed the son and then herself.

Plaintiff subsequently brought this action on behalf of the son's estate, alleging that CSD was negligent in returning the custody of the son to the wife. At trial, plaintiff's expert opined that the wife was psychotic when she killed her son and herself, that the psychosis was a substantial factor in causing her to kill her child, that her psychosis was caused by failure to take her medications, and that her treatment plan had been negligently devised in that it lacked sufficient safeguards for ensuring that she took her medications.

In response, defendant sought to introduce a photograph of a medication chart attached to the wife's refrigerator. According to the offer of proof, the wife would make a mark on the chart each day after taking her medication. Defendant argued that the chart was relevant to prove that the wife was taking her medication at the time of her death. Plaintiff objected on the basis that the chart was hearsay. The trial court admitted the photograph for the limited purpose of showing what CSD representatives had seen in the wife's apartment that supported their belief that the wife was taking her medications, or in other words, it admitted the exhibit for the purpose of demonstrating the exhibit's effect on CSD. Accordingly, it gave a limiting instruction that is the subject of the first assignment of error.[2]

Defendant argues that when the trial court told the jury that it could not consider the medication chart as

---

[2] The assignment of error says:

"The trial court erred in instructing the jury that Bonnie Lutz's medication chart could not be considered as substantive evidence that she was taking her medications."

substantive evidence that the wife was taking her medication, it erred because the chart fell within the statements made to a physician for purposes of medical treatment exception to the hearsay rule. *See* OEC 803(4). In response, plaintiff first argues that defendant's assignment of error was not preserved below because it did not except to the limiting instruction. Defendant concedes that it did not make an exception, but argues that no exception was required because the instruction was a necessary adjunct to the court's earlier evidentiary ruling that the exhibit could be admitted only for a limited purpose and, clearly, the trial court was apprised of defendant's position that the chart was admissible under OEC 803(4).

OEC 105 provides:

"When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."

Here, the trial court ruled pretrial on the admissibility of the chart. Then, when the exhibit was offered in the presence of the jury, it gave the limiting instruction that is the subject of the assignment of error. It repeated that instruction during the cross-examination of a witness from CSD and during defendant's closing argument in response to an objection by plaintiff.

■ ORCP 59 H provides, in part, that "no instruction given to a jury shall be subject to review upon appeal unless its error, if any, was pointed out to the judge who gave it * * *." The Supreme Court has identified two exceptions to this rule. First, no exception is required when the trial court refuses to give a requested jury instruction that clearly and directly calls to its attention the failure to instruct the jury on essential matters relevant to determining the questions raised by the parties. *Roberts v. Mitchell Bros. Truck Lines*, 289 Or 119, 611 P2d 297 (1980). Second, no exception is required when counsel has made the objection to the instruction "very clear" to the trial court before the jury is instructed. *Rogers v. Hill*, 281 Or 491, 496 n 4a, 576 P2d 328 (1978).

██ This assignment of error comes to us in a peculiar posture. Although the parties argue on appeal about the propriety of the court's evidentiary ruling regarding the chart, defendant does not assign that ruling as error. The evidentiary ruling as to the purpose for which the chart could be considered was made pretrial and the jury instructions given during the trial were discrete acts by the trial court. In order to have an appellate court consider an issue, it must be assigned as error. ORAP 5.45(2). *See also State v. Brown,* 310 Or 347, 355, 800 P2d 259 (1990). Because defendant has not assigned as error the court's evidentiary ruling that the chart could not be used to show that the wife took her medications, we decline to consider that issue. Moreover, in the light of defendant's concession that it did not except to the trial court's instructions limiting the use of the exhibit, and because we find nothing in the record to indicate that the exceptions to ORCP 59 H apply, the assignment of error predicated on the jury instruction is unpreserved. *See Blair v. Mt. Hood Meadows Development Corp.,* 291 Or 293, 303, 630 P2d 827, *mod* 291 Or 703, 634 P2d 241 (1981). Therefore, we reject defendant's first assignment of error.

██ Defendant also assigns error to the trial court's ruling excluding evidence concerning plaintiff's disposition of his son's remains. Defendant offered evidence that plaintiff took the body in a body bag from a funeral home in Newport and transported it in his car to Oregon City for cremation in order to save approximately $125 in funeral expenses. Defendant argues that the evidence is probative because it controverts plaintiff's claim that he had suffered damage as a result of the loss of his son's society and companionship. The court concluded that the evidence was more prejudicial than probative and excluded it under OEC 403.

██ First, defendant argues that the trial court did not make an adequate record for purposes of review. When making a ruling under OEC 403, a trial court errs if it fails to exercise discretion, refuses to exercise discretion or fails to make a record that reflects an exercise of discretion. *State v. Mayfield,* 302 Or 631, 645, 733 P2d 438 (1987). Here, the record is clear that the court exercised its discretion. The issue is whether it made a sufficient record for review. In *State v. Rood,* 118 Or App 480, 848 P2d 128, *rev den* 317 Or

272 (1993), the defendant contended that the record did not demonstrate that the trial court followed the analysis required by OEC 403. We said:

"The transcript shows that, during argument on defendant's motion to exclude the evidence, the trial court considered both its relevance and its prejudicial effect. The court implicitly followed the [*State v.*] *Johns,* [301 Or 535, 725 P2d 312 (1986)] analysis[3] in its ruling, and that is sufficient." 118 Or App at 483-84.

Our holding in *Rood* followed our decision in *State v. Smith,* 86 Or App 239, 739 P2d 577 (1987), in which we said:

"In *State v. Johns,* [*supra*], the court suggests an extensive analysis that a trial court must pursue in making the determination under OEC 403. The record does not disclose that the trial court in this case specifically or systematically followed the *Johns* process. The parties had argued, in conjunction with defendant's pretrial motion to exclude the evidence, whether it was other crimes evidence and whether it was unduly prejudicial. The court was aware of those arguments when the state offered and defendant objected to the rebuttal evidence. Although the court did not expressly analyze the evidence pursuant to OEC 403, it implicitly applied the analysis in its ruling. The relevant factors are not disputed in the record and we conclude that the court did not abuse its discretion." 86 Or App at 246-47.

Here, after the jury was selected, plaintiff moved to limit defendant's evidence in a number of particulars. The court heard argument from both sides, including defendant's argument that the evidence was probative and plaintiff's argument that the evidence was "pretty serious prejudicial stuff." The court said:

"I think its probative value is outweighed by its prejudicial effect. I think this evidence can be interpreted in two ways. There are those that think funeral homes are literally knocking us dead in terms of what they charge and people are able to afford. I think this gets us into an area —

"* * * * *

---

3 In *State v. Johns, supra,* the court said that in balancing the probative value of evidence against the danger of unfair prejudice to defendant, a trial court must consider (1) the need for the evidence; (2) the certainty of the evidence; (3) the relative strength or weakness of the evidence; (4) its inflammatory effect on the jury; and (5) the time that will be consumed by admitting the evidence.

"Let me put it this way: If, in your cross-examination, it comes out that there is some issue directly related to the transportation of the corpse to Portland, which would impact that which they have proven, then we talk about it, but not going in. I think it's pretty inflammatory stuff."

We hold that under these circumstances, the record shows that the trial court implicitly applied the proper analysis.

■■ Alternatively, defendant argues that the trial court erred when it concluded that the prejudicial effect of the evidence outweighed its probative value. Our standard of review under OEC 403 is whether the trial court abused its discretion. *State v. Smith*, 310 Or 1, 20-21, 791 P2d 836 (1990). An abuse of discretion occurs when a court exercises its discretion to an end not justified by and clearly against the evidence and reason. *State v. Mason*, 100 Or App 240, 243, 785 P2d 378 (1990).

■ Defendant argues that the probative value of the evidence outweighs its prejudicial effect, because it demonstrates that plaintiff did not value his son's society and companionship as demonstrated by the manner in which he treated his son's remains. Even if the evidence is relevant for that purpose, the trial court held that the evidence was *unfairly* prejudicial. In the context of OEC 403, "unfair prejudice" means that the evidence promotes a decision on an improper basis including an emotional one. *See* Legislative Commentary to Rule 403, reprinted in Kirkpatrick, *Oregon Evidence* 125 (2d ed 1989). It was not unreasonable for the trial court to conclude that the evidence would have the effect of causing the jury to decide the issue on an emotional basis and, therefore, its ruling was within its range of discretion.

Affirmed.

**HASELTON, J.,** concurring.

I agree with the majority's disposition of the second assignment of error. However, because I believe we should reach the merits of the first assignment of error, and affirm, I concur.

The views I express are novel and probably idiosyncratic. They express, no doubt, the personal and professional frustrations of a recent past member of the trial and

appellate bars, who agonized over confusing, seemingly arcane and arbitrary principles of preservation and reviewability.[1] As such, my concurrence is not a criticism of the majority's application of those principles, but a call for a reevaluation of those principles, which, after all, we created.

This case captures a trial and appellate lawyer's recurring nightmare: Once a trial judge has made his or her views clear, must trial counsel continue to object to rulings involving the same issue or risk non-preservation? Must appellate counsel assign error to every predicate and derivative ruling to insure reviewability under ORAP 5.45?

In the abstract, it is easy to answer, "Yes." But the realities of litigation, the "dodging bullets" exigencies of trial and appellate practice, are so often very different. Given those realities, preservation and reviewability are best regarded not as "rules" of arithmetic precision, but as flexible, often benign, principles.

I depart from the majority's approach for two reasons. First, notwithstanding the majority's treatment of the trial court's evidentiary ruling and its limiting instructions as "discrete" events, 130 Or App at 283, I believe they were inextricably intertwined. In particular, I agree with defendant that, because the trial court's evidentiary ruling resulted in the *admission* of the medication chart, any prejudice to the defense from that ruling was inchoate. That prejudice did not become real, thus rendering the court's ruling reviewable on appeal, until the court actually instructed the jury that it could not consider the chart for substantive purposes. Thus, unlike an appeal of an evidentiary ruling excluding evidence, the objectionable event here was the combination of the evidentiary ruling *and* the giving of the limiting instruction. Although it may have been preferable for defendant to object and assign error to both components, objecting to one and assigning error to the other should have been adequate to preserve the issue for our review. *See Rogers v. Hill*, 281 Or 491, 496 n 4a, 576 P2d 328 (1978).

Second, even without the "inchoate/realized prejudice" relationship between the evidentiary ruling and the

---

[1] *See, e.g., McPike v. Enciso's Cocina Mejicana, Inc.*, 93 Or App 269, 272-73 n 4, 762 P2d 315 (1988).

limiting instruction, review accords with the policies underlying our preservation and assignment of error requirements. Consistent with those policies, failure to assign error to an earlier, predicate ruling should not preclude our review if error is properly preserved and assigned to a subsequent, derivative ruling *that presents the identical issue.*

In such circumstances, because of the identity of the issue, the policies of preservation are well served: The issue has been fully litigated before the trial court, which has had a full and fair opportunity to rule in the first instance. *See State v. Brown*, 310 Or 347, 356, 800 P2d 259 (1990). *Accord Rogers v. Hill, supra,* 281 Or at 496 n 4a (review of allegedly defective jury instruction was proper notwithstanding the defendant's failure to except to that instruction where defense counsel "made very clear his objection on the precise point now raised on appeal and the court made it equally clear that he disagreed with this point and would give the instruction despite the defendant's objection"). Nor are the policies underlying our assignment of error requirements compromised: We and the opposing party have clear and fair notice of the substance of the issue disputed on appeal. *See Shields v. Campbell*, 277 Or 71, 74, 559 P2d 1275 (1977).

On the record before us, I have no doubt that if defendant had objected to the limiting instructions, the trial court would have denied that objection for the reasons expressed in its evidentiary ruling; the issues were identical. *See Rogers v. Hill, supra.* Nor is there any doubt that if defendant had assigned error to the evidentiary ruling, the argument in support of that putative assignment would have mirrored the appellant's brief's discussion of the first assignment of error; indeed, the discussion of the two "assignments" would properly have been combined. *See* ORAP 5.45(6).

No one was "sandbagged." No one is operating under any illusions. The admissibility of the medication chart under OEC 803(4) was squarely presented to the trial court, as it is to us. To withhold review in such circumstances is to relegate appellate advocacy to mere gamesmanship, in which the inevitable "sins" of even the most conscientious counsel

are visited on their clients.[2] Reaching the merits of the first assignment of error, I would, nevertheless, affirm.

---

[2] There are, however, limits. At some point, trial counsel's acquiescence, without objection, in a series of subsequent and increasingly prejudicial events rises to the level of either waiver or invited error. *See, e.g., Davis v. O'Brien*, 128 Or App 428, 875 P2d 1193 (1994).