Argued and submitted November 7, 2011, in Case No. A134660 (Control) (declaratory judgment), January 2007 general judgment vacated and remanded for entry of judgment consistent with this opinion; September 2009 supplemental judgment reversed; in Case No. A139749 (lien foreclosure), July 2008 supplemental judgment affirmed; in Case No. A141288 (writ of review), appeal dismissed as moot, on cross-appeal, January 2009 general judgment reversed and remanded for entry of a judgment dismissing for lack of prosecution; in Case No. A142266 (lien foreclosure), April 2009 supplemental judgment affirmed; in Case No. A144320 (quiet title), December 2009 general judgment reversed as to award of attorney fees; otherwise affirmed April 25, 2012

Dennis HUNT
and Nick Shevchynski
as Co-Trustees of the Clarabell Trust,
*Plaintiffs-Appellants,*

*v.*

CITY OF EUGENE,
a municipal corporation,
*Defendant-Respondent.*

Lane County Circuit Court
120614854; A134660 (Control)

CITY OF EUGENE,
a municipal corporation,
*Plaintiff-Respondent,*

*v.*

Philip M. NEWMAN,
Trustee under the Michelle Halverson Trust
dated June 21, 1989;
and Sharlee C. WOOD,
Trustee under the Clairabell Trust,
*Defendants,*
*and*

Nick SHEVCHYNSKI,
in his capacity as Trustee of the Clairabell Trust,
dated July 7, 1989,
*Defendant-Appellant.*

Lane County Circuit Court
160120047; A139749

Nick SHEVCHYNSKI
and P. M. Newman, Trustee,
*Plaintiffs-Appellants*
*Cross-Respondents,*
*v.*

CITY OF EUGENE,
a municipal corporation,
*Defendant-Respondent*
*Cross-Appellant,*

*and*

James W. SPICKERMAN;
James W. Spickerman, P. C.;
and Hammonds Mills & Spickerman,
in their capacities as hearings officer for the City of Eugene,
*Defendants.*

Lane County Circuit Court
169404823; A141288

CITY OF EUGENE,
a municipal corporation,
*Plaintiff-Respondent,*

*v.*

Philip M. NEWMAN,
Trustee under the Michelle Halverson Trust
dated June 21, 1989;
and Sharlee C. Wood,
Trustee under the Clairabell Trust,
*Defendants,*

*and*

Nick SHEVCHYNSKI,
in his capacity as Trustee of the Clairabell Trust,
dated July 7, 1989,
*Defendant-Appellant.*

Lane County Circuit Court
160120047; A142266

Nick SHEVCHYNSKI,
individually;
and Nick Shevchynski
and Dennis Hunt,
co-trustees of the Clarabell Trust,
*Plaintiffs-Appellants,*

*and*

Clara SHEVCHINSKI
and Clarabell Trust,
*Plaintiffs,*

*v.*

Warren WONG,
Carole Marten, Deeann Hardt,
Sarita Black, and Dennis Taylor,
*Defendants,*

*and*

CITY OF EUGENE,
*Defendant-Respondent.*

Lane County Circuit Court
160607152; A144320

278 P3d 70

Judith Giers argued the cause for appellants - cross-respondents. With her on the briefs was Giers Olsson PC.

Jona Maukonen argued the cause for respondent - cross-appellant. With her on the briefs were James E. Mountain, Jeffrey J. Matthews, and Harrang Long Gary Rudnick P.C.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

This 18-year plague on the judicial system is before us yet again, this time with six judgments in four different actions, 13 assignments of error on appeal, four assignments on cross-appeal, and 200 pages of appellate briefing—all because of "unsightly" yard debris. For the reasons that follow, we affirm in part and reverse in part.

## I. PROCEDURAL HISTORY

The relevant procedural history of this metastasis begins in the fall of 1993, when the City of Eugene ordered Nick Shevchynski and Philip M. Newman to either correct city code violations on property on Skyline Boulevard or else face a daily penalty. The code violations were based on an accumulation of "unsightly" debris, the storage of wood scrap, and vehicles in the yard. In March 1994, a hearing officer for the city concluded that a leaf pile and wood scrap were in violation of the city code and imposed a $4,000 fine ($100 per day for violations over 40 days) on Shevchynski, the property's occupant, and Newman, one of its owners.

What followed was the result of procedural mishaps, as well as confusion and disagreement about who, exactly, owned the Skyline property. Shevchynski had purchased the property on a land sale contract from Sharlee Wood in 1981. Eight years later, he transferred the property to Newman, the trustee of the Halverson trust, which Shevchynski had created for the benefit of his daughter. By the terms of the Halverson trust, Newman was then required to deed the Skyline property four or five years later to a different trust, the Clarabell trust, whose primary beneficiary was Shevchynski's mother, Clara.

Two months after the hearing officer imposed the $4,000 fine, Newman, the Halverson trustee, recorded a deed to transfer ownership of the Skyline property to the Clarabell trust. The day after recording the deed, Shevchynski and Newman filed a petition for issuance of a writ of review, challenging the imposition of the $4,000 fine. Their writ of review

petition alleged that the city had failed to follow its own procedures, that the fine was not supported by substantial evidence, and that the city's nuisance ordinance was unconstitutionally vague. In the course of the writ of review proceedings, Judge Allen, the circuit court judge to whom the case was assigned, discovered that three-quarters of the audio recording of the administrative hearing was missing. On December 2, 1994, Judge Allen ordered the city to hold a new hearing within 45 days but did not issue the writ of review.

The city held a new hearing 10 days later, but it did not give sufficient notice to Shevchynski and Newman, neither of whom appeared. The city then held a third hearing in January 1995, and the hearing officer imposed a fine of $3,400, reduced from $4,000. The hearing officer further concluded that Shevchynski alone was responsible for the fine (as opposed to Newman, the trustee, or Sharlee Wood, who still carried a contract on the property).

At that point, the parties returned to the writ of review proceedings before Judge Allen. Shevchynski argued that the January 1995 hearing (the third hearing) had not been held on the same basis as the first hearing, as the court had ordered, because the city did not call the same witnesses. Judge Allen agreed and, in April 1995, set aside the fine.

The city appealed the decision to set aside the fine, and this court vacated the judgment and remanded the case to the circuit court. *Shevchynski v. City of Eugene*, 157 Or App 355, 970 P2d 237 (1998). We held that the circuit court lacked authority to set aside the city's order because the court had never actually issued a writ of review, as required by ORS 34.060 and ORS 34.080. *Id.* at 360.

By the time that the case was remanded to the circuit court, Judge Allen had retired, and the case was assigned to Judge Billings. However, Shevchynski and the other writ petitioners moved to disqualify Judge Billings, and the motion was granted. The case was then assigned to Judge Velure, and his rulings on various issues, including on another motion to disqualify and a third amended petition, yielded two notices of appeal. In February 2001, those appeals were dismissed by order (for lack of an appealable

order) and jurisdiction returned to the circuit court. At that point, the writ of review proceeding stalled—neither the court nor the parties did anything in response to the remand from this court.

A few months later, in August 2001, the city mailed a notice of two liens on the Skyline property—one based on the $4,000 fine (from the hearing officer's original decision) and another for an unrelated $18,160 fine. But rather than mail the notice to Shevchynski, the city mailed it to Sharlee Wood, who still had an interest in the property according to the tax rolls. By 2001, Shevchynski had already paid off the land sale contract to Wood, but Wood had not recorded a deed transferring the property to him; one week after the city mailed the notice, Wood recorded a deed conveying the property to Shevchynski. The deed purported to be "the fulfillment of a land sale contract" and noted, in terms of encumbrances, "Decision - Findings of Hearing, City of Eugene Lien."

In October 2001, the city filed a new action in Lane County Circuit Court in which it sought to foreclose the two liens. The city named Newman, Halverson trustee, and Sharlee Wood, Clarabell trustee, as the defendants in the lien foreclosure action. Wood, though, was never a Clarabell trustee, and the city dismissed her from the action. The city proceeded with only Newman, Halverson trustee, as the defendant. Newman, in his original answer, denied that he owned the Skyline property.

The parties to the lien foreclosure action—the city and Newman, as the Halverson trustee—filed cross-motions for summary judgment in the summer of 2002. Newman, in opposition to the city's motion, argued that the writ of review proceeding regarding the $4,000 fine—a case that had been inactive since it was remanded in February 2001—was nonetheless still pending, and that the $4,000 fine was not yet final. The trial court granted the city's motion for summary judgment at a hearing in September 2002.

In early October 2002, Newman asked to be joined in the lien foreclosure action in a different capacity: that of a co-trustee of the *Clarabell* trust.[1] He also moved to join

---

[1] Shevchynski's father, Leon, was the original trustee of the Clarabell trust. He died in 1996, and Clara, the successor trustee, elected not to serve for health

Shevchynski, co-trustee of the Clarabell trust, while Shevchynski separately filed a motion to intervene in his individual capacity. The trial court denied the motions to join the Clarabell co-trustees and denied Shevchynski's motion to intervene.

Four interlocutory appeals later, and after a failed attempt to remove the lien action to federal court, the parties in May 2006 litigated the form of judgment in the lien foreclosure action. The city's draft contained a recitation that "[i]t appears that legal title to the property that is the subject of this foreclosure action is held by one or more trustees of the Cliarabell Trust and that one or more of the trustees of the Cliarabell Trust has received notice of these proceedings."[2] The draft judgment then stated that the city "is awarded judgment against defendants, the trustees of the Cliarabell Trust, or such other persons or entities having notice of these proceedings insofar as they have or may have an interest in the property that is the subject of this case * * *." Newman objected to the proposed judgment on the ground that the Clarabell trustees had not been named as parties. Shevchynski, meanwhile, filed another round of motions to intervene in the action on behalf of the Clarabell trustees. The city responded that the only "competent evidence in the record" is that "the property is currently owned by Philip M. Newman and Nick Shevchynski as co-trustees of the Cliarabell Trust dated June 21, 1989." The city further argued that "Newman has been a party to this action since its inception [so] there is no reason to allow another purported co-owner of the property to intervene this late in the proceedings." The trial court entered the judgment proposed by the city.

Newman appealed the judgment in the lien foreclosure action, naming four "appellants" in his notice of appeal: "Nick Shevchynski"; "P.M. Newman Trustee"; "Philip M. Newman Trustee under the Michelle Halverson Trust dated June 21, 1989"; and "Dennis Hunt Trustee." On July 11, 2006, this court dismissed the appeal on its own motion. We

---

reasons. Philip Newman and Nick Shevchynski, who were next in line, became successor co-trustees.

    [2] The name "Clarabell," originally written in the Cyrillic alphabet, has been spelled different ways throughout the proceedings.

concluded that only "Philip M. Newman Trustee under the Michelle Halverson Trust dated June 21, 1989" was a party to the foreclosure action, and thus the only party that might have standing to appeal. We then concluded, however, that because the judgment recites that the Clarabell trust—rather than the Halverson trust—owns the Skyline property, the judgment on appeal did not "adjudicate any legally protectable interest of Philip M. Newman in his capacity as trustee of the Halverson Trust"; hence, he too lacked standing. Newman did not seek review of the dismissal. The city scheduled a foreclosure sale of the Skyline property for August 3, 2006.

Four days before the scheduled sale, Newman and Shevchynski filed a fourth action, this time seeking declaratory relief. (In addition to the writ of review and lien foreclosure actions, Shevchynski, individually and as Clarabell co-trustee, and Dennis Hunt, as Clarabell co-trustee, had already filed a quiet title action in April 2006 to remove liens from the Skyline property; more on that later.) In the declaratory relief action, Shevchynski and Hunt, as Clarabell co-trustees, sought a declaration that the lien foreclosure judgment "is void insofar as it purports to foreclose the interests of one or more of the trustees of the Clairabell Trust in the property that was the subject of that action." The parties filed cross-motions for summary judgment.

In its motion for summary judgment, the city argued that, under the doctrine of issue preclusion, the Clarabell trustees were barred from relitigating the same issues that were decided in the lien foreclosure action—namely, the validity of the lien or the city's right to foreclose. The Clarabell trustees (Shevchynski and Hunt) opposed the motion on the ground that Newman participated in the lien foreclosure action as the *Halverson* trustee and not as a *Clarabell* trustee. The trial court concluded that, "although he was not named or served in that capacity, Newman was a trustee of the Clarabell trust" and "participated in the prior litigation and had a full and fair opportunity to be heard on the foreclosure issue." In January 2007, the trial court entered judgment to that effect in the declaratory judgment action. That is one of the judgments currently on appeal; a

supplemental judgment awarding attorney fees to the city is another.

Shortly thereafter, the parties filed cross-motions for summary judgment in the quiet title action that Shevchynski, Hunt, and Clara Shevchynski filed as Clarabell co-trustees in April 2006 to clear the liens from the Skyline property. The city argued, among other things, that the Clarabell trustees' exclusive remedy was by writ of review (and not quiet title) and that their claims were, in any event, precluded by rulings in other cases. In March 2007, the trial court granted the city's motion for summary judgment on the claims in the quiet title action. The court later entered a judgment to that effect, and that included an award of attorney fees to the city. That is the third of the six judgments now on appeal.

All the while, as the parties aggressively litigated the lien foreclosure, declaratory judgment, and quiet title actions, the writ of review proceeding remained dormant. That is, after Newman's appeal was dismissed by this court in 2001, nothing happened in the writ of review proceeding for more than *six* years. Then, at the end of October 2007— after the city obtained rulings adverse to the Clarabell trustees in the other three cases—Shevchynski and Newman filed a petition for leave to file a fourth amended petition for issuance of the writ.

The city opposed the revival of the writ of review action on several grounds, including a motion to dismiss the action based on want of prosecution. The circuit court denied the city's motion to dismiss the action, granted the petitioners' motion to file a fourth amended petition, and, in January 2008—14 years after the original petition was filed—issued the writ of review requiring the city to return the writ along with a certified copy of the administrative record.

The city filed the return of writ with a copy of the administrative record attached. As noted above, there were actually three administrative hearings, two of which were held after the circuit court determined that the first hearing had not been properly recorded. In 1998, this court held that the circuit court erred in setting aside the city's order without first issuing the writ; as a result, the hearing at issue on

remand—now ten years after our decision—was the *first* administrative hearing. This time around, the circuit court, Judge Hart, ruled that no new hearing would be held and instead ordered the parties to supplement the administrative record with their recollections and, if possible, the recollections of others, about the first hearing. The court also ruled that, although the second and third hearings were not being reviewed, they nonetheless would be "considered as part of the factual and evidentiary record in the court's review."

After the parties supplemented the record as ordered, they briefed the issues raised in petitioners' fourth amended petition. Judge Hart, after reviewing the supplemented administrative record, concluded that the $4,000 fine imposed by the city was not supported by substantial evidence. Judge Hart reduced the fine to $3,400 and entered judgment accordingly—the fourth judgment on appeal.

Meanwhile, after the writ issued but before Judge Hart reduced the fine, Newman had moved to set aside the lien foreclosure judgment on the ground that the issuance of the writ demonstrated that the fine, on which the lien in the foreclosure action was based, still was not final. At this point, Shevchynski, Clarabell co-trustee, was substituted as the successor to Newman. Judge Hart, who was now assigned to the lien foreclosure action as well, denied the motion to set aside the judgment and entered a supplemental judgment to that effect.

Once Judge Hart actually reduced the fine in the writ of review action from $4,000 to $3,400, Shevchynski filed another motion to set aside or correct the lien foreclosure judgment. Shevchynski argued that the $4,000 fine essentially had been vacated, and that the lien foreclosure judgment, which was based on that fine, should not be given prospective application. Judge Hart denied the second motion as well, ruling that Shevchynski had appealed the judgment in the writ of review proceeding and that, before considering whether to set aside the foreclosure judgment, "[t]he court shall wait until [Shevchynski] has exhausted his appeal process and that [writ of review] judgment is made final." The

court entered another supplemental judgment denying the second motion to set aside the lien foreclosure judgment. The supplemental judgments in the lien foreclosure action are the last two judgments on appeal.[3]

## II. ANALYSIS

As previously lamented, the Clarabell trustees advance 13 assignments of error on appeal, and the city advances four assignments of error on cross-appeal. We begin by addressing the writ of review action because it is, to some degree, the predicate for the various actions on appeal.

### A. *The Writ of Review Action*

In its cross-appeal, the city contends, among other things, that the circuit court erred in denying its motion to dismiss the writ of review action and allowing the Clarabell trustees—after a six-year hiatus and almost 14 years after the original petition—to proceed on a fourth amended petition. For the reasons that follow, we agree with the city that, under the totality of the circumstances, the circuit court erred in allowing the Clarabell trustees to revive the writ of review action.

To recap, the writ of review action was initiated in 1994 and essentially went inactive after this court dismissed various interlocutory appeals in February 2001. Then, in late October 2007, after receiving adverse rulings in the lien fore-closure, declaratory judgment, and quiet title cases, the Clarabell trustees requested leave to file a fourth amended petition for issuance of the writ.[4]

The city opposed that motion and moved to dismiss the writ of review action for lack of prosecution. The city argued that, over six and a half years, the Clarabell trustees had litigated everything but the writ of review action; it therefore "would be unjust to allow [them] to both defend and

---

[3] Chronologically, the writ of review judgment came after the first of the two supplemental judgments, but they are more conveniently grouped this way.

[4] The lone OJIN entry between February 2001 and October 2007 is a notice of appeal from 2006, which was generated when the Clarabell trustees included the writ of review case number in the notice of appeal of a judgment in a different case.

attack the administrative penalty at issue in three other proceedings, utilizing enormous resources of the court and the City, and then after six and a half years once again pick up the prosecution of their claims in this case in an effort to collaterally attack the judgments previously entered in other cases."

The circuit court denied the city's motion on the ground that the Clarabell trustees, who were *pro se* during the relevant period, had not received notice—either from the court pursuant to ORCP 54 B(3) or by way of an earlier motion from the city—that the action was at risk of being dismissed. ORCP 54 B(3) provides:

> **"Dismissal for want of prosecution; notice.** Not less than 60 days prior to the first regular motion day in each calendar year, unless the court has sent an earlier notice on its own initiative, *the clerk of the court shall mail notice to the attorneys of record in each pending case in which no action has been taken for one year immediately prior to the mailing of such notice that a judgment of dismissal will be entered in each such case by the court for want of prosecution unless, on or before such first regular motion day, application, either oral or written, is made to the court and good cause shown why it should be continued as a pending case.* If such application is not made or good cause shown, the court shall enter a judgment of dismissal in each such case. Nothing contained in this subsection shall prevent the dismissal by the court at any time for want of prosecution of any action upon motion of any party thereto."

(Boldface in original; emphasis added.) The court, applying that rule, stated that

> "[t]he problem is, [the rule] says the Court shall mail notice, and the Court did not. So I'm not going to rely on that * * *, I don't think that was good. It would have been nice to have a Motion.[5] It would have been nice to have it mailed, but it wasn't all taken care of, so I'm denying that one."

(Underscoring in original.)

---

[5] It is not clear from the court's ruling whether it was referring to the lack of some earlier motion from the city or simply misspoke and was referring to the lack of notice from the court.

We review that ruling for an abuse of discretion. *Horn v. Calif-Ore. Power Co., et al.*, 221 Or 328, 335, 351 P2d 80 (1960) ("Obviously motions for the dismissal of actions for want of prosecution are addressed to the discretion of the circuit court."). That is, we will not disturb the court's ruling on the city's motion to dismiss for want of prosecution unless the decision is " 'not justified by and clearly against the evidence and reason.' " *Lambert v. American Dream Homes Corp.*, 148 Or App 371, 376, 939 P2d 661 (1997) (quoting *Lutz v. State of Oregon*, 130 Or App 278, 285, 881 P2d 171 (1994)).

On this record, we agree with the city that the undisputed facts yield only one legally permissible conclusion: that the writ of review proceeding should have been dismissed after six and a half years of inaction. Initially, ORCP 54 B(3) expressly contemplates that an action may be dismissed despite the fact that the court clerk has not previously notified the parties that the case has been inactive for more than a year; the final sentence of the rule states that "[n]othing contained in this subsection shall prevent the dismissal by the court at any time for want of prosecution of any action upon motion of any party thereto."[6] Nor does the rule or any other principle of Oregon law require that a defendant—here, the city—file its motion at the earliest possible time in order to spur the plaintiff to action. *See Horn*, 221 Or at 337 ("The responsibility of a defendant for the progress of a case is not the same as that of the plaintiff. * * * [T]he responsibility of seeing to it that the case is entered upon the docket for trial is that of the plaintiff.").[7]

The lack of notice and lack of an earlier motion on the part of a defendant might, in some circumstances, nonetheless inform a trial court's decision whether to dismiss for lack of prosecution. However, to the extent that those facts are relevant here, they do not justify anything close to the six and a half years of delay in prosecuting a writ of review

---

[6] Technically, the rule requires the court clerk to notify the "attorneys of record." We note that the Clarabell trustees were *pro se* at the time.

[7] The Clarabell trustees suggest that, because they filed their request to amend the petition *before* the city moved to dismiss, there was no failure to prosecute at the time of the motion. They cite no authority for that proposition, and we are not persuaded that the court's authority to dismiss for lack of prosecution is so limited.

action that, by February 2001, was already *seven years* after the challenged administrative action. Nor does the fact that the Clarabell trustees were proceeding *pro se* somehow justify their inaction in the writ of review case. The trustees suggest that they were simply waiting for the court to schedule something after the remand, but the history of this dispute suggests anything but a "wait and see" approach to litigation; during the six and a half years of inaction in the writ of review proceeding, the Clarabell trustees were vigorously litigating the lien foreclosure action and had filed two more actions, declaratory judgment and quiet title. In those three actions—actions that had, as their *predicate*, the validity of the fine imposed by the underlying administrative order— the Clarabell trustees litigated to the hilt, filing countless motions and appealing nearly every adverse order (whether it was appealable or not). Throughout that time, the Clarabell trustees were acutely aware that the writ of review action had not yet concluded; indeed, they argued in the lien foreclosure and quiet title actions that the city's lien was unlawful because the underlying administrative order imposing the fine was still under review and therefore not yet final.

Furthermore, the Clarabell trustees attempted to revive the writ of review action only *after* receiving adverse rulings in those other three actions. The consequences, in terms of judicial efficiency, are manifest. The lien foreclosure and quiet title cases each depend on the validity of the $4,000 fine that is challenged in the writ of review action; the declaratory judgment, in turn, depends on the judgment in the lien foreclosure action. And because of the order in which the various actions were litigated, we are now in the backward posture of considering "finality" and "preclusive effect" of rulings in cases that depend, in part, on the outcome of a writ of review action that was filed first and litigated last.

Finally, the actual period of delay—six and a half years of inactivity—is both significant in the abstract and, even more so, under the particular circumstances of this case. The one-year period for dismissing cases based on inactivity under ORCP 54 B(3) is a "yard stick which helps to measure

diligence or its lack." *Horn*, 221 Or at 337.[8] Six and a half years is well past that yardstick, but beyond that, by February 2001—the beginning of the period of inactivity—the writ of review action had already been pending for *seven* years. The city, consequently, was required to defend the validity of an administrative decision that it made almost 14 years earlier.[9]

In short, the Clarabell trustees offered no reasonable justification for allowing the writ of review action to be inactive for six and a half years, only to be revived after adverse rulings in the other related cases. Whether strategically or inadvertently, the writ of review action was litigated as an afterthought, and the court abused its discretion by allowing it to continue, to the prejudice of the city, after being inactive for more than six and a half years. On the facts of this case, the court should have granted the city's motion to dismiss the writ of review action for lack of prosecution.[10]

## B. *The Declaratory Judgment Action*

The Clarabell trustees advance five assignments of error that involve their declaratory judgment action, four of which concern declarations the court made after granting summary judgment to the city; the fifth assignment involves the trial court's award of attorney fees to the city.

[8] *Horn* involved *former* ORS 18.260, which was replaced by ORCP 54. Or Laws 1979, ch 284, § 199. The text of *former* ORS 18.260 and ORCP 54 B(3) is nearly identical.

[9] We note that the writ of review petitioners challenged, among other things, the sufficiency of the record of the 1994 administrative hearing, much of which was unrecorded. As it turned out, the circuit court later ordered the parties to supplement the hearing record—almost 14 years after the fact—with their recollections of what had transpired at the hearing. That ruling is itself the subject of an assignment of error by the Clarabell trustees, but it demonstrates just one of the many problems occasioned by the inordinately long delay.

[10] Our decision renders moot the parties' remaining assignments of error regarding the writ of review action—that is, the Clarabell trustees' sixth, seventh, eight, and ninth assignments of error, as well as the city's first, second, and fourth assignments of error on cross-appeal.

Furthermore, as previously noted, once the writ issued, the Clarabell trustees moved to correct the lien foreclosure judgment; they again moved to correct the lien foreclosure judgment after the circuit court reduced the fine to $3,400 in the writ of review proceeding. The court denied both motions and, on appeal, the Clarabell trustees assign error to those rulings as an abuse of discretion. We reject those assignments of error (10 and 11) without discussion.

1. *Summary judgment*

   a. Issue preclusion

In their complaint for declaratory relief, the Clarabell trustees sought a declaration that the lien foreclosure judgment "is void insofar as it purports to foreclose the interests of one or more of the trustees of the Clairabell Trust in the property that was the subject of that action." The claims were based on a provision of the lien foreclosure judgment that stated:

> "The defendants, *any trustee of the Cliarabell Trust*, and any other person with notice of these proceedings and each of them, and all persons claiming through or under them, as purchasers, encumbrancers, or otherwise, *are forever foreclosed of all interest, lien or claim in the real property described above and every portion thereof*, excepting only any statutory right of redemption as these persons may have therein."

(Emphasis added.) The Clarabell trustees alleged that, despite that language, the foreclosure judgment was "not effective" to foreclose their interests in the Skyline property because "no trustee of the Clairabell Trust was ever served with summons or named as a defendant in the foreclosure proceeding."

The parties filed cross-motions for summary judgment regarding the declaratory judgment claim, and the trial court granted the city's motion and denied the Clarabell trustees' motion. The court granted the city's motion because, among other reasons, the Clarabell trust's interests in the foreclosure action "were represented by [Clarabell trustee] Newman regardless of the capacity in which he appeared" and that, under the doctrine of issue preclusion, the Clarabell trustees were barred from relitigating whether the Clarabell trust's interests in the property were foreclosed.

The common-law doctrine of issue preclusion prevents parties from collaterally attacking judgments under certain circumstances. For issue preclusion to apply, five conjunctive requirements must be satisfied: (1) the issues in the two proceedings must be "identical"; (2) the issue must have

been "actually litigated" in the earlier proceeding and "essential to a final decision on the merits in the prior proceeding"; (3) the party sought to be precluded must have had "a full and fair opportunity to be heard on that issue"; (4) the party sought to be precluded must have been a party or in privity with a party to the prior proceeding; and (5) the prior proceeding must have been "the type of proceeding to which this court will give preclusive effect." *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 104, 862 P2d 1293 (1993).

According to the Clarabell trustees, the first four of those requirements are not satisfied here. Their arguments flow, initially, from the proposition that the issues in the two proceedings—lien foreclosure and declaratory judgment—are different. Specifically, they contend that the trial court "confuse[d] the *relief sought* in the declaratory judgment action with the *legal issue* presented." (Emphasis added.) Although the relief sought was a declaration that the Clarabell trustees' interest in the property had not been foreclosed, the *issue* presented was whether their interest "could be foreclosed given that they were not named or served, and that they were denied party status when they moved to be added as defendants." The city, in response, argues that the Clarabell trustees have framed the issue too narrowly, and that there is no meaningful distinction between a determination that the Clarabell trustees' interests "are forever foreclosed" and a declaration as to whether they *could* be.

The city has the better argument. A party cannot relitigate the same issue under different legal theories in successive cases. The earlier judgment declared that the Clarabell trustees' interests were foreclosed. Now, the Clarabell trustees want to advance a different theory as to why that cannot be the case, but the ultimate legal issue is identical.[11]

---

[11] Frankly, it is not even an entirely new theory. As later discussed with regard to the second preclusion factor, Newman, as Halverson trustee, challenged the proposed lien foreclosure judgment on the ground that nonparties and others who had not received notice could not be bound by the foreclosure judgment. The court rejected that argument and entered the proposed judgment with the challenged language.

With the issue so framed, we likewise conclude that it was "actually litigated" and "essential" to the final decision in the lien foreclosure case. The lien foreclosure judgment explicitly provides that "any trustee of the Cliarabell Trust" is "forever foreclosed of all interest, lien or claim in the real property described above * * *." Newman, as the Halverson trustee defendant, objected to that part of the judgment on various grounds, including that the Clarabell trustees had not been named as defendants and that "Philip M. Newman Trustee didn't exist since 1994 and was never associated with the 'Cliarabell Trust.' " The trial court necessarily rejected those arguments.

The closer questions are whether the Clarabell trustees had a full and fair opportunity to be heard (the third factor), and whether they were parties or in privity with parties to the prior proceeding (the fourth factor), considering that their motions to intervene were denied and their appeals dismissed. As previously described, the city originally named Newman as "trustee under the Michelle Halverson Trust" and Sharlee Wood as "trustee under the Clairabell Trust" as the defendants in the lien foreclosure action. Wood, who was a previous owner of the Skyline property but never a Clarabell trustee, was dismissed from the case. The city then proceeded only against Newman, and he initially denied the allegation that he owned the Skyline property.

On October 10, 2002, nearly a year after the complaint was filed in the lien foreclosure action, Newman, as a Clarabell trustee, and Shevchynski, individually, recorded a bargain and sale deed that purported to transfer their interests in the Skyline property to themselves as co-trustees of the Clarabell trust.[12] Five days later, Shevchynski filed a motion to be joined as a co-trustee and owner of the property, based on the October 10 deed; Newman filed his own motion requesting Shevchynski's joinder and also a motion that Newman himself be joined as a *Clarabell* trustee rather than *Halverson* trustee.

---

[12] Incidentally, this is the same day that the remand order from United States District Court was entered by the trial court after Shevchynski's failed attempt to remove the action to federal court.

The court initially ruled that Newman's and Shevchynski's joinder as Clarabell co-trustees would be permitted provided that Shevchynski serve the city with true copies of the trust documents, or, if unavailable, certifications about the trusts; however, the trial court also stated that, in the event that Shevchynski failed to comply, the joinder motions would be denied. In April 2003, the court denied Newman's and Shevchynski's motions to be joined as Clarabell co-trustees "for failure to comply with the directives" of the court's order.

After the foreclosure judgment was entered, Newman appealed and named four appellants: "Nick Shevchynski"; "P.M. Newman Trustee"; "Philip M. Newman Trustee under the Michelle Halverson Trust dated June 21, 1989"; and "Dennis Hunt Trustee." We dismissed the appeal on our own motion, concluding that the defendants claiming to be Clarabell trustees—now Hunt and Shevchynski—were not parties below and lacked standing. We further concluded that, because the lien foreclosure judgment states that the Clarabell trust owns the Skyline property, the judgment did not adjudicate any interest of Newman as Halverson trustee; thus, he likewise lacked standing.

The Clarabell trustees contend that, because they were not allowed to join the lien foreclosure action, they did not have a "full and fair opportunity" to be heard. Their argument, however, ignores the trial court's willingness to join the Clarabell trustees as parties, provided that they comply with the court's order to produce the relevant trust documents or certifications. It was the Clarabell trustees' own failure to comply with that court's order that prevented them from participating as parties in the lien foreclosure action and that ultimately caused the standing issue on appeal. In short, the Clarabell trustees had a "full and fair opportunity to be heard" but did not take advantage of the opportunity. Thus, the third *Nelson* factor was satisfied in this case.

We further agree with the trial court's conclusion that the fourth *Nelson* factor was present—that is, that the party precluded is the same as or in privity with the party in the earlier proceeding. As the trial court explained, "the interests of the Clarabell trust in the foreclosure case were

represented by Newman regardless of the capacity in which he appeared"; and furthermore, "it is undisputed that [Shevchynski] participated in the litigation from the beginning, not merely assisting Newman, but doing the legal research, drafting the motions, and essentially acting as if he were an attorney for Newman as trustee." In other words, the Clarabell trustees—Newman and Shevchynski during the relevant time—controlled the lien foreclosure action despite not being parties. *See Thomas v. U.S. Bank National Association*, 244 Or App 457, 473, 260 P3d 711, *rev den*, 351 Or 401 (2011) ("Privity" for issue preclusion "encompasses 'those who control an action although not parties to it; those whose interests are represented by a party to the action; and successors in interest to those having derivative claims.' ") (quoting *Wolff v. Du Puis*, 233 Or 317, 322, 378 P2d 707 (1963), *overruled in part by Bahler v. Fletcher*, 257 Or 1, 474 P2d 329 (1970)) (emphasis omitted); *Stevens v. Horton*, 161 Or App 454, 462, 984 P2d 868 (1999), *rev den*, 331 Or 692 (2001) ("Nonparties to prior adjudications whose rights can realistically be said to have been protected in [prior] proceedings" include "those who control an action though not a party to it"); *see also Carter v. LaDee Logging Co.*, 142 Or 439, 455-56, 18 P2d 234 (1933) (although not named as parties, persons may so connect themselves to the litigation through active participation and control that they are bound to same extent as if they were nominal party to the action).

"An inherent limitation on using the concept of privity * * * is a concern about the fairness of binding a person to a judgment rendered in an earlier case in which he or she was not a party." *Bloomfield v. Weakland*, 339 Or 504, 511, 123 P3d 275 (2005). Here, the Clarabell trustees had opportunities not only to control the litigation but to participate as *parties*; their own failure to comply with the court's order regarding joinder limited their involvement. There is nothing unfair about binding the Clarabell trustees to the lien foreclosure case.

For those reasons, we conclude that the trial court ruled correctly that "the present trustees are not entitled to a declaration that the [lien foreclosure judgment] is not binding on them and the subject property."

### b.  Conveyance of Clarabell trustees' interests

The Clarabell trustees also challenge the trial court's alternative reasoning for denying their requested relief, including a part of the declaratory judgment that states, "Any interest the trustees and beneficiaries of the Clarabell Trust have in the Property was conveyed to them after the complaint in the prior proceeding was filed." They contend that the trial court addressed issues regarding ownership of the property that were not raised below by the parties. A discussion of that alternative basis would not benefit the bench, the bar, or the public; suffice it to say that we agree that the alternative analysis (delineated as paragraph 2 in the declaratory judgment itself and the incorporated opinion on summary judgment) should be deleted from the declaration. It is, in any event, superfluous.

### 2.  *Attorney fees*

In addition to granting summary judgment in favor of the city, the trial court awarded attorney fees to the city under ORS 20.105, on the ground that the Clarabell trustees had "no objectively reasonable basis" for asserting the claim for declaratory relief. The court, in no uncertain terms, questioned the motives of Newman and Shevchynski in bringing the action:

> "The entire course of their dealings with the property raises more than a suspicion of obfuscatory shenanigans. Examples include: the same-day transfer of the property from Shevchynski to Newman as trustee of the Halverson trust and then from Newman to the Clarabell trust; the unexplained lapses between the execution and recording of deeds; and Shevchynski's attempt to disclaim the warranty deed from Sharlee Wood. In addition, the multitude of ill founded motions, the attempt to remove the litigation to federal court, and multiple appeals of decisions in it [*sic*] prior proceeding evidence a hostility to the City with little regard to the merits of the City's claim.
>
> "The court cannot help but conclude that Shevchynski has *purposely protracted* the litigation involving the City's liens through manipulation of real property transfer and court procedure. The present litigation is merely a continuation of that conduct. It took a full review of the record in

the prior proceeding by this court to understand fully the disingenuousness of the trustees' claims in the present action. Having understood what transpired, *this court concludes that the only purpose for the present lawsuit was to further badger the city under the guise of due process.*"

(Emphasis added.)

On appeal, the Clarabell trustees argue that the court erred in basing a fee award on their improper motives. That is, they submit that, whatever their motives might have been—a matter they dispute—their claims in the declaratory judgment action were nonetheless objectively reasonable. We agree.

Quite simply, bad faith and improper motives are not relevant considerations in determining whether an award of attorney fees is required under ORS 20.105(1). *Williams v. Salem Women's Clinic,* 245 Or App 476, 483, 263 P3d 1072 (2011); *Benaman v. Andrews,* 213 Or App 467, 478, 162 P3d 280 (2007) (a party's personal motivation for seeking relief is not relevant to the question whether an attorney fee award is required under ORS 20.105(1)); *Secor Investments, LLC v. Anderegg,* 188 Or App 154, 174, 71 P3d 538, *rev den,* 336 Or 146 (2003) (" '[B]ad faith' is immaterial to a determination of entitlement to fees under ORS 20.105."). The relevant inquiry is whether the claim has an *objectively* reasonable basis—*i.e.,* whether the claim was "entirely devoid of legal or factual support either at the time it is made or, in light of additional evidence or changes in the law, as litigation proceeds." *Williams,* 245 Or App at 482 (internal quotation marks and citations omitted).

In this case, we cannot say that the Clarabell trustees' claims were entirely devoid of legal or factual support. Indeed, they had both. The Clarabell trustees advanced a plausible argument, supported by evidence in the record, that they had not been joined in the lien foreclosure action and, consequently, could not be bound by the judgment in that action. We ultimately disagree with their legal theory, but that does not mean that it is objectively unreasonable. The privity requirement of common-law issue preclusion, as applied to the novel facts of this case, is by no means settled

law. The trial court erred in concluding that the city was entitled to attorney fees under ORS 20.105, because the Clarabell trustees' claims were objectively reasonable, regardless of their underlying motivation. Accordingly, we reverse the supplemental judgment for attorney fees in the declaratory judgment action.

## C. *The Quiet Title Action*

### 1. *Summary judgment*

Shortly after the trial court granted summary judgment in favor of the city in the declaratory judgment action, the city moved for summary judgment in the quiet title action arguing, among other contentions, that the Clarabell trustees' quiet title action was precluded by the lien foreclosure action. Having reviewed the issues raised in the quiet title action, we affirm the grant of summary judgment for the same reasons previously discussed regarding the declaratory judgment action. The issue—the validity of the lien—was the subject of the foreclosure action.

### 2. *Attorney fees*

As in the declaratory judgment action, the trial court awarded attorney fees to the city on the ground that the claims in the quiet title action were brought without an objectively reasonable basis. And, for the same reasons set forth above, we conclude that the court erred in awarding fees pursuant to ORS 20.105. The Clarabell trustees advanced plausible, albeit losing, arguments that they were not precluded by the judgment in the lien foreclosure action. The fact that Shevchynski may have been "purposely and vexatiously protract[ing] the litigation" does not give the city an entitlement to attorney fees under ORS 20.105, because the claims the Clarabell trustees asserted were not devoid of factual and legal support. Thus, we reverse the award of attorney fees in the quiet title action.

## III.  SUMMARY

To recap, the trial court erred in allowing the Clarabell trustees to revive their long-inactive writ of review action. We reverse the general judgment in that action and remand

for entry of judgment dismissing the writ of review action for lack of prosecution. We affirm the trial court's rulings in the declaratory judgment action, with the exception of attorney fees and the alternative reasoning regarding conveyance of the Clarabell trustees' interests during the litigation. We therefore reverse the supplemental judgment for attorney fees in the declaratory judgment action and remand for entry of a declaratory judgment that denies the requested relief solely on the basis of issue preclusion. We likewise affirm the judgment dismissing the quiet title claims but reverse the award of attorney fees in that action.

In Case No. A134660 (Control) (declaratory judgment), January 2007 general judgment vacated and remanded for entry of judgment consistent with this opinion; September 2009 supplemental judgment reversed. In Case No. A139749 (lien foreclosure), July 2008 supplemental judgment affirmed. In Case No. A141288 (writ of review), appeal dismissed as moot; on cross-appeal, January 2009 general judgment reversed and remanded for entry of a judgment dismissing for lack of prosecution. In Case No. A142266 (lien foreclosure), April 2009 supplemental judgment affirmed. In Case No. A144320 (quiet title), December 2009 general judgment reversed as to award of attorney fees; otherwise affirmed.