Argued and submitted November 4, 1998, affirmed July 7, 1999

## Clifford Wayne STEVENS,
### *Appellant,*

### *and*

## Mary Darlene STEVENS,
### *Plaintiff,*

### *v.*

## J. Pat HORTON,
## Daniel H. Koenig and Gary Babcock,
### *Respondents.*

### (16-96-03935; CA A99581)

984 P2d 868

Mark McCulloch argued the cause for appellant. With him on the briefs was Powers, McCulloch & Bennett, LLP.

Janet Schroer argued the cause for respondents J. Pat Horton and Daniel H. Koenig. With her on the briefs were Marjorie A. Speirs and Hoffman, Hart & Wagner.

Lloyd W. Helikson argued the cause for respondent Gary Babcock. With him on the brief were William G. Wheatley and Jaqua & Wheatley, P.C.

Before De Muniz, Presiding Judge, and Haselton and Armstrong, Judges.

HASELTON, J.

**HASELTON, J.**

Plaintiff-appellant,[1] in this legal malpractice action, appeals from judgments in favor of defendants Horton and Koenig,[2] who represented plaintiff in a criminal proceeding, and Babcock, who represented plaintiff both in a post-conviction proceeding, *Stevens v. State of Oregon*, 322 Or 101, 902 P2d 1137 (1995), and in a prior filing of a malpractice claim against Horton and Koenig.[3] Plaintiff contends, principally, that, given the analysis and result in *Stevens*, he was entitled to partial summary judgment against Horton and Koenig based on issue preclusion. We conclude that issue preclusion is inapposite because defendants were neither parties to the post-conviction proceeding nor in privity with the state in that proceeding, and we reject plaintiff's other arguments. Accordingly, we affirm.

In 1990, plaintiff was charged with rape in the first degree. ORS 163.375 (1989). The indictment alleged that

---

[1] The original complaint included a claim for loss of consortium by Mary Darlene Stevens, Clifford Stevens's wife. However, the subsequent amended complaint alleged only legal malpractice and named Clifford Stevens as the only plaintiff. We therefore refer to Clifford Stevens as the only plaintiff.

[2] Except where specifically noted, references to "defendants" in this case are to Horton and Koenig, and not to Babcock.

[3] We invoke the adage, "you can't tell the players without a scorecard." As described below, this case involves the interplay between four distinct proceedings: a criminal case, a post-conviction case, and two civil malpractice cases. Horton and Koenig represented plaintiff in the criminal case. Babcock successfully represented plaintiff in the post-conviction case, *Stevens*, which challenged the adequacy of representation that Horton and Koenig provided in the criminal case. After Babcock filed the post-conviction case but before post-conviction relief was allowed, Babcock filed the first malpractice case against Koenig. The trial court dismissed that action as premature "with prejudice," *see Stevens v. Bispham*, 316 Or 221, 230-31, 851 P2d 556 (1993), and ultimately, the appeal that was taken from that order was dismissed for want of prosecution. Finally, after the Supreme Court allowed post-conviction relief in *Stevens*, plaintiff brought this action against Horton and Koenig, based on their representation of plaintiff in the criminal trial, and against Babcock for failing to prosecute the appeal of the dismissal "with prejudice" of the first malpractice action.

Babcock is a defendant on appeal. However, plaintiff asserts no assignment of error as to Babcock that is distinct from those raised with respect to Horton and Koenig. In fact, Babcock's liability for malpractice would only be implicated in this case if we were to conclude that Horton and Koenig would be liable to plaintiff but for the preclusive effect of the unchallenged "with prejudice" dismissal of the first malpractice action. Our disposition of plaintiff's assignments of error obviates any analysis of Babcock's putative liability.

plaintiff had raped a 12-year-old girl with a learning disability. Plaintiff retained Horton to represent him in that criminal proceeding, and Horton eventually turned plaintiff's case over to his law partner, Koenig, who tried the case. After a trial to the court, plaintiff was convicted of sexual abuse in the second degree, ORS 163.425, and sentenced to six months in prison. We affirmed that conviction, *State v. Stevens*, 111 Or App 452, 826 P2d 649 (1992), and plaintiff served 143 days in jail.

Following his release from prison in June 1991, plaintiff retained Babcock to represent him in a proceeding for post-conviction relief on the ground that his representation at trial, by Horton and Koenig, was constitutionally inadequate. The trial court denied his claim for post-conviction relief, as did we. *Stevens v. State of Oregon*, 129 Or App 533, 879 P2d 893 (1994), *rev'd* 322 Or 101, 902 P2d 1137 (1995). On review, the Supreme Court reversed, holding that plaintiff had been denied effective assistance of counsel in violation of Article I, section 11, of the Oregon Constitution. *Stevens*, 322 Or at 110. Specifically, the court determined that (1) Horton and Koenig had failed "to interview certain potential witnesses" and "to have petitioner examined medically to determine whether he was impotent at the time of the alleged rape"; (2) those omissions constituted a failure "to exercise reasonable professional skill and judgment"; and (3) that failure had "a tendency to effect the result of the prosecution." *Id.* On remand, the prosecutor dismissed the case because plaintiff had already served time for sexual abuse in the second degree and could not be retried for rape.

In July 1992, while plaintiff's appeal from the trial court's denial of post-conviction relief was pending, Babcock filed a legal malpractice action against Koenig on plaintiff's behalf. The trial court granted Koenig's motion for summary judgment and consequently dismissed plaintiff's malpractice claim "with prejudice," because he was unable to demonstrate that he had been exonerated of the sex abuse conviction.[4] *See Stevens v. Bispham*, 316 Or 221, 230-31, 851 P2d

---

[4] Plaintiff immediately filed a timely notice of appeal of that dismissal with this court, but plaintiff's appeal was eventually dismissed for want of prosecution. Three years later, plaintiff filed a motion for order to show cause why the final judgment should not be amended to recite that that action was dismissed without prejudice. Plaintiff's motion was denied, and plaintiff did not appeal.

556 (1993) (legal malpractice claim for representation in criminal proceeding does not accrue until plaintiff obtains post-conviction relief, reversal on appeal, or some other form of exoneration).

In May 1996, after the Supreme Court allowed plaintiff's request for post-conviction relief, plaintiff filed the complaint in this action. Plaintiff alleged that:

> "Defendants Horton and Koenig, acting alone, together, and as agents for one another, were negligent in their representation of Clifford Stevens in one or more of the following respects:
>
> > "a. They failed to interview certain potential witnesses, and offer those witnesses in the defense of Clifford Stevens at his criminal trial; and
> >
> > "b. They failed to have plaintiff medically examined, and to offer medical test results in the defense of Clifford Stevens at his criminal trial."

Plaintiff further alleged that,

> "[i]n the event that plaintiff Clifford Stevens is prevented from proceeding against defendant Koenig as set forth in the First Cause of Action on account of the dismissal 'with prejudice,' then defendant Babcock's negligence resulted in the damages to Clifford Stevens set forth in paragraphs 13 and 14."

Before trial, plaintiff moved for partial summary judgment, asserting that, under principles of issue preclusion, "the entire [o]pinion of the reported case of *Stevens v. State of Oregon*, 322 Or 101 (1995), including all statements of fact and conclusions of law contained therein, is binding upon the parties to this proceeding." Defendants then moved for summary judgment, arguing that the 1993 dismissal "with prejudice" of plaintiff's legal malpractice claim precluded further litigation of plaintiff's malpractice claim against them. The court denied both motions, and the case proceeded to trial. After a four-day trial, the jury returned a verdict for defendants.[5]

---

[5] The trial court entered a separate judgment in favor of defendant Gary Babcock based on its conclusions that "[p]laintiff Stevens is precluded from recovering any damages against defendant Babcock by virtue of the verdict in favor

On appeal, plaintiff raises three assignments of error. First, plaintiff assigns error to the trial court's denial of his motion for partial summary judgment that would have given preclusive effect to various aspects of the Supreme Court's opinion in *Stevens*, including, particularly, the Supreme Court's determination that Koenig had failed to exercise reasonable professional skill and judgment in his representation of Stevens. Second, plaintiff argues that the trial court abused its discretion in granting defendants' motion *in limine* to exclude references to the Supreme Court's opinion in *Stevens*. Third, plaintiff assigns error to the trial court's denial of his motion *in limine* to exclude evidence of Stevens's "prior bad acts." We reject each.[6]

In moving for partial summary judgment, plaintiff argued that various of the factual findings and legal conclusions that underlay the Supreme Court's holding in *Stevens* should be given preclusive effect in the malpractice action. Each of those matters pertained to whether defendants had exercised reasonable professional skill and judgment in their representation of Stevens during his criminal trial, *i.e.* the "breach" element of the legal malpractice claim.[7] The trial court denied plaintiff's motion.

On appeal, plaintiff reiterates his argument that, because the inquiry as to the breach of the standard of care is identical in post-conviction and malpractice cases, a determination in the former should be preclusive in the latter. Defendants offer three alternative responses, two procedural and the other substantive: (1) The trial court lacked authority under ORCP 47 A to grant partial summary judgment with respect to the discrete matters raised in plaintiff's motion.[8] (2) The denial of partial summary judgment is not appealable.[9] (3) In all events, issue preclusion is inapposite

---

of defendants Horton and Koenig" and "defendant Babcock is entitled to judgment in his favor * * * as to plaintiff's claim of negligence against [him]."

[6] Given our disposition of plaintiff's assignments of error, we need not address Horton and Koenig's cross-assignment of error.

[7] Although part of plaintiff's original motion for partial summary judgment pertained to the issue of causation, not breach, plaintiff ultimately withdrew his request for summary judgment on the issue of causation. Accordingly, plaintiff does not challenge the denial of that part of his motion on appeal.

[8] Only Horton and Koenig make that argument.

[9] Only Babcock makes that argument.

because the issues presented in the two proceedings were not identical and because defendants were not parties to the post-conviction proceeding and were not in privity with the state in that proceeding.

■ The plain language of ORCP 47 A answers, and defeats, defendants' first argument. That rule provides:

> "*A party seeking to recover upon a claim,* counterclaim, or cross-claim or to obtain a declaratory judgment *may,* at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, *move,* with or without supporting affidavits, *for a summary judgment in that party's favor upon all or any part thereof.*" (Emphasis added.)

The language "all or any part thereof" is explicit and unambiguous. Here, plaintiff sought partial summary judgment with respect to matters pertaining to whether defendants' representation had breached the standard of care. That breach is an essential element of any malpractice claim. Accordingly, the trial court had authority under ORCP 47 A to grant the requested relief.[10]

■ Defendant Babcock's argument that the denial of partial summary judgment is nonappealable is a *non sequitur.* The issue, as presented here, is not one of *appealability,* but of *reviewability.* Plaintiff is not appealing from the order denying summary judgment; rather, he is appealing from the final judgment following the jury trial and, in the context of that appeal, assigns error to the earlier denial of summary

---

[10] Defendants' reliance on *Lesch v. DeWitt,* 317 Or 585, 587-90, 858 P2d 872 (1993), and *Beaty v. Grady, Harper & Carlson, Inc.,* 126 Or App 388, 391, 868 P2d 778 (1994), is unavailing. Both of those cases addressed the court's lack of authority to enter *final judgments* under ORCP 67 B on less than a whole claim. They did not address, much less dispute, the court's authority to enter interlocutory orders under ORCP 47 A granting partial summary judgment on "any part" of a claim. *See also* ORCP 47 C (expressly allowing "summary judgment," interlocutory in character, on issue of liability); ORCP 47 H ("In any action involving multiple parties or multiple claims, a summary judgment which is not entered in compliance with Rule 67 B shall not constitute a final judgment."); *cf. Taylor v. Baker,* 279 Or 139, 141 n 2, 566 P2d 884 (1977) (noting that trial court properly granted partial summary judgment on one count of a multi-count claim, because the legislature's decision not to adopt Rule 56(d) of the Federal Rules of Civil Procedure "was not intended to eliminate from the statute the trial court's authority to render partial summary judgments").

judgment. Because that assignment of error turns, ultimately, on issues of law, *viz.*, the applicability of issue preclusion, the error is reviewable. *See Payless Drug Stores v. Brown*, 300 Or 243, 246, 708 P2d 1143 (1985) (denial of a motion for summary judgment is not reviewable in an appeal from a judgment after trial unless the motion raised only an issue of law about which the facts found at trial could have made no difference).

We turn then to the merits of the denial of partial summary judgment and, particularly, to whether, or to what extent, determination of matters in the post-conviction case precluded their relitigation in the malpractice case.

■ Issue preclusion bars litigation of an issue already "litigated and determined" in a context where "its determination was essential to" the final decision. *Drews v. EBI Companies*, 310 Or 134, 137, 795 P2d 531 (1990). Issue preclusion applies only where the following five requirements are met:

"1. The issue in the two proceedings is identical.

"2. The issue was actually litigated and was essential to a final decision on the merits in the prior proceedings.

"3. The party sought to be precluded has had a full and fair opportunity to be heard on that issue.

"4. The party sought to be precluded was a party or was in privity with a party to the prior proceeding.

"5. The prior proceeding was the type of proceeding to which this court will give preclusive effect." *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 104, 862 P2d 1293 (1993) (citations omitted); *see also State Farm Fire and Cas. Co. v. Reuter*, 299 Or 155, 158-59, 700 P2d 236 (1985).

Defendants argue that neither the first nor the fourth requirements is satisfied here. We need not address the first requirement because, in all events, we agree with defendants that issue preclusion cannot be asserted against them because they were not "a party * * * or in privity with a party" to the post-conviction proceeding. *Nelson*, 318 Or at 104.

■■ The purpose of the "party or in privity with a party" requirement is to ensure that the party being estopped was

"adequately protected in the first trial and therefore received due process." *Gaul v. Tourtellotte*, 260 Or 14, 20, 488 P2d 416, 420 (1971). Nonparties to prior adjudications whose rights can realistically be said to have been protected in those proceedings tend to fall into one of three categories: (1) those who control an action though not a party to it; (2) those whose interests are represented by a party to the action; and (3) successors in interest to those having derivative claims. *Id.* (citing *Wolff v. Du Puis*, 233 Or 317, 322, 378 P2d 707 (1963), and *Restatement of Judgments*, § 83 at 389 (1942)).

■ Plaintiff contends that defendants fall into the second privity category because their interests were represented by the state in the post-conviction proceeding. Specifically, plaintiff argues that, because "Koenig's testimony and involvement were center stage" and the state's case "solely depended on Koenig establishing that he acted reasonably," the state "virtually represented Koenig" in the post-conviction proceeding. We disagree.

The only parties to the post-conviction proceeding were Stevens and the State of Oregon. In that proceeding, the state represented its own interest, which was to preserve its conviction of Stevens for sexual abuse in the second degree. To preserve that conviction, the state had to defeat plaintiff's contention that he was denied his constitutional right to effective assistance of counsel during the criminal proceeding. Thus, in a pragmatic sense, plaintiff is correct that Koenig's testimony was central to the state's defense in the post-conviction proceeding. However, Koenig's mere *participation* in the post-conviction proceeding cannot be equated with the state's *representation* of his interests.

That is so for two reasons. First, the state had no duty to represent defendants, and, accordingly, defendants lacked any ability to direct or control the state's defense of Koenig's conduct. As nonparties to the post-conviction proceeding, defendants had no right or ability to call expert witnesses to testify as to whether his conduct was reasonable; nor did they have the opportunity to cross-examine witnesses put on by plaintiff. Second, because the state's interests in the post-conviction proceeding differed dramatically from defendants' interests in the malpractice proceeding, the state

cannot be said to have "represented" defendants' "interests." In a post-conviction proceeding, the state stands to lose a conviction (that it can generally prosecute again in a new trial). In a malpractice proceeding, on the other hand, a lawyer's personal interests are at stake, including his or her professional and financial future. Given defendants' lack of control over the post-conviction proceeding and their distinct personal stake in the malpractice case, we hold that they were not in privity with the state for purposes of issue preclusion. Consequently, the trial court did not err in denying plaintiff's motion for partial summary judgment.

Plaintiff's second assignment of error challenges the trial court's allowance of defendants' motion *in limine* restricting references to the Supreme Court's opinion in *Stevens*. In particular, defendants sought an order instructing plaintiff, his attorneys and witnesses not to directly or indirectly present any "evidence, comment, argument or questions pertaining to the decision of the Oregon Supreme Court in *Stevens*" without first obtaining permission from the court outside the presence of the jury. Defendants requested that order on the grounds that "any probative value of the [Oregon Supreme Court]'s findings in *Stevens* would be substantially outweighed by the danger of unfair prejudice to defendants Horton and Koenig."

In colloquy before the trial court, plaintiff's counsel stated that he did not intend to introduce the Supreme Court's opinion as evidence. He argued, however, that plaintiff's expert witness should be allowed to testify that his professional opinion—that Koenig breached the standard of care—was based, in part, on the *Stevens* decision. The trial court did not prohibit all references to the post-conviction proceeding but did make the following ruling:

> "My inclination at this point * * * is that your expert certainly can comment about the fact that he took into consideration opinions of appellate courts about what is the standard of care. And that he considered a case that is a case wherein failure to investigate falls below the constitutional requirements of a criminal trial.

> "But my inclination at this point is to leave the fact that it was Mr. Koenig's case out. That he certainly can testify

about the standards of care as set forth by the Supreme Court b[ut] not allowing him to testify that that standard of care was set in Mr. Koenig's case, precisely because naming him doesn't add anything more to the standard of care than he would be coming up with in review of the appellate courts."

We review the trial court's ruling under OEC 403 for abuse of discretion. *Carter v. Moberly*, 263 Or 193, 200-03, 501 P2d 1276 (1972).

■ OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

Defendants argue that the trial court did not abuse its discretion in excluding specific references to *Stevens* on the grounds that any probative value of those references would be outweighed by the prejudicial effect. We agree.

Plaintiff's expert witness was to testify that his opinion that defendants had breached the standard of care was based on the fact that the Supreme Court had already examined Koenig's representation of Stevens and concluded that it was inadequate. The probative value of plaintiff's witness referring to *Stevens* related to the Supreme Court's discussion of the standard for breach, *i.e.* what constitutes adequate investigation of a client's case. Though relevant, there can be little doubt that the jury could easily be prejudiced, or at least confused, by evidence that the Supreme Court had already concluded that Koenig's representation of Stevens was inadequate. Indeed, there was a very real likelihood that the jury would have given the Supreme Court's opinion preclusive effect, effectively circumventing and subverting the trial court's correct conclusion, in denying partial summary judgment, that *Stevens* should not be given such effect. Conversely, by permitting plaintiff's expert to describe his reliance on appellate court opinions and the legal standards discussed therein without making direct reference to *Stevens*, the trial court essentially permitted plaintiff to avail himself of the core probative value of the *Stevens* ruling without

importing potential prejudice from permitting the expert to refer to the particulars of that case. The trial court's ruling thus effected a reasoned reconciliation of the parties' competing needs and was well within its discretion.

■ Plaintiff asserts, nevertheless, that, because a Supreme Court opinion is a source "reasonably relied upon" by experts in the legal profession in forming their opinions on the standard of care owed by an attorney to his or her client, plaintiff's expert witness was permitted to refer to *Stevens* under OEC 703. That argument fails. OEC 703 allows an expert to *base* his or her opinion on inadmissible facts and data, where those facts and data are of a type reasonably relied upon by experts in the particular field.[11] Nothing in OEC 703 suggests that otherwise inadmissible evidence is admissible simply because it was the basis for the expert's opinion. *See State v. Knepper*, 62 Or App 623, 626, 661 P2d 560 (1983). Under the trial court's ruling, plaintiff's expert was free to "base his opinion" on the Supreme Court's ruling in *Stevens*. OEC 703 did not compel the trial court to permit plaintiff's witness to make explicit reference to the facts underlying the decision in *Stevens*.

■ We turn finally to plaintiff's third assignment of error, which challenges the admission of alleged "prior bad acts" evidence. To properly understand the nature and relevance of the disputed evidence and the trial court's ruling, some explanation is required.

In the criminal trial, in which Stevens was prosecuted for first-degree rape, the complainant stated that Stevens "took out his privates and * * * stuck it inside of me." She described Stevens's "privates" as "pretty long [and] hard." Central to both the post-conviction case and this legal malpractice action was plaintiff's allegation that, given the complainant's testimony, Koenig had breached the standard of care by failing "to have Stevens medically examined and to

---

[11] OEC 703 provides:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. *If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.*" (Emphasis added.)

offer medical test results of his impotency in defense at his criminal trial."

Before trial in this case, plaintiff moved *in limine*, requesting

"[t]hat this court exclude any reference to any allegation that plaintiff may have engaged in any conduct similar to conduct for which he was accused in the underlying criminal case, with any person, including but not limited to his daughter, or any allegedly mentally retarded woman of approximately 26 years of age."

In support of his motion, plaintiff argued that any evidence of his "prior bad acts" was inadmissible under OEC 404.[12]

In response, defendants argued that evidence of plaintiff's previous sexual conduct was relevant to the issue of whether Koenig had acted reasonably in choosing not to introduce evidence of plaintiff's impotence at the criminal trial. Specifically, defendants explained that Koenig would testify that his reason for not raising the impotence defense was that he was very concerned that the state would then be able to bring in evidence of plaintiff's prior sexual conduct to refute the alleged impotence. Defendants also represented that the prosecutor in the criminal trial, Mullen, would testify that he warned Koenig repeatedly that he planned to introduce evidence that Stevens had molested his own daughter if Koenig tried to argue that Stevens was impotent. Defendants argued that, given Koenig's testimony regarding the basis of his decision to forego the impotence defense, the evidence of Stevens's prior sexual conduct would be highly relevant to whether Koenig acted as a reasonable criminal defense lawyer in making that decision.

---

[12] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

The trial court ruled:

"[W]ith the representations that Mr. Koenig is going to testify that he, in fact, thought about * * * [the danger of opening the door to prior bad act testimony by arguing plaintiff's impotence] at the time [of the criminal trial] even though he didn't testify about it in the prior proceeding, and based upon the testimony that Mr. Mullen was apparently going to testify that he threatened Mr. Koenig with this precise witness, the motion is denied."

Plaintiff assigns error to that denial, and we again review for abuse of discretion. *Carter*, 263 Or at 200-03.

We agree with the trial court that, in light of Koenig's testimony that he opted not to pursue an impotence defense because he knew that the state might get the "bad acts" evidence in, evidence of those prior bad acts was relevant to the jury's determination as to whether Koenig acted reasonably in representing Stevens.

Thus, the question reduces to whether the trial court abused its discretion in determining that the evidence of Stevens's "bad acts" was more probative than prejudicial. We conclude that, although evidence of Stevens's "bad acts" doubtless could have had a prejudicial effect on the jury, there is no question that evidence of those acts was central, indeed critical, to the issue of whether Koenig acted reasonably in foregoing an impotence defense. Given the central relevance of those facts, the trial court did not abuse its discretion in concluding that the probative value of the "bad acts" evidence outweighed its prejudicial impact.[13]

Affirmed.

---

[13] Plaintiff argues that the "bad acts" evidence was inadmissible under the test prescribed in *State v. Johns*, 301 Or 535, 557-58, 725 P2d 312 (1986). That argument misses the mark. The four-factor test in *Johns* balances the probative versus prejudicial value of "prior bad acts" evidence offered to prove *intent*. The "prior bad acts" evidence in this case was never offered to prove intent: In Stevens's criminal trial, the state would have offered the prior bad acts evidence to impeach Stevens's hypothetical impotence defense and, in this case, the prior bad acts evidence was offered as probative of Koenig's thought processes.