# IN THE SUPREME COURT OF IOWA

No. 19–1558

Submitted December 16, 2020—Filed February 26, 2021

**DONALD CLARK,**

Appellee,

vs.

**STATE OF IOWA,**

Appellant.

Appeal from the Iowa District Court for Johnson County, Lars Anderson, Judge.

The defendant brings an interlocutory appeal from the district court's grant of partial summary judgment on the plaintiff's legal malpractice claim. **REVERSED AND REMANDED.**

Oxley, J., delivered the opinion of the court, in which all justices joined.

Thomas J. Miller, Attorney General, Jeffrey S. Thompson, Solicitor General, Noah Goerlitz and David M. Ranscht, Assistant Attorneys General, for appellant.

Frank J. Nidey and Clemens A. Erdahl of Nidey, Erdahl, Meier & Araguas, P.L.C., Cedar Rapids, and Thomas P. Frerichs of Frerichs Law Office, P.C., Waterloo, for appellee.

**OXLEY, Justice.**

A criminal defendant who successfully overturns his conviction based on ineffective assistance of counsel may bring a legal malpractice action against his former attorney. Can he then use that successful action to stop his former attorney from claiming he did not breach any duties in the subsequent malpractice action? That question turns on application of the doctrine of issue preclusion, which allows a party to rely on an issue decided in one proceeding to affirmatively establish the same issue in a later proceeding, as long as the party against whom the doctrine is used had a full and fair opportunity to litigate the issue in the first proceeding. Here, a criminal defendant, represented at trial by a state public defender, brought a malpractice action against the State as the public defender's employer. He now seeks to invoke issue preclusion based on his prior successful ineffective assistance claims to establish the breach element of his malpractice claim as a matter of law. We must decide whether the fact that the State was the named defendant in both actions—defending the State's conviction in the postconviction-relief proceeding and defending its public defender employee in this malpractice action—brings issue preclusion into play.

For the reasons that follow, we conclude it does not.

## I. Factual Background and Proceedings.

In 2010, Donald Clark was convicted of second-degree sexual abuse and received an indeterminate twenty-five-year sentence. *State v. Clark*, 814 N.W.2d 551, 560 (Iowa 2012). The alleged abuse took place during the 2003–2004 school year when Clark was a counselor at an elementary school and worked with a fifth-grade student who accused Clark of inappropriately touching him during a counseling session in Clark's school office. *Id.* at 554. There were no witnesses to the alleged abuse and no

physical evidence, so the trial came down to a "he said, he said" credibility contest. Clark's conviction was affirmed on appeal, and we left Clark's ineffective-assistance-of-counsel claims for further development in postconviction-relief (PCR) proceedings. *Id.* at 560, 567.

Clark immediately filed a PCR action in August 2012, seeking a new trial based on two grounds: ineffective assistance of counsel and newly discovered evidence. State public defender John Robertson represented Clark in his criminal trial.[1] A key point of contention during the criminal trial involved the line of sight into, and the layout of, Clark's school office. Clark claimed Robertson failed to investigate the scene or offer photographs of the office into evidence to rebut the misleading pictures offered by the prosecution. Clark also claimed Robertson failed to inform him about depositions of key witnesses who testified about the school layout, preventing Clark from assisting in his defense. Without this information, Robertson was unable to effectively rebut the prosecution's evidence. Finally, Clark argued Robertson failed to present character witnesses after other "bad act" evidence about Clark was admitted at trial.

To support his claim that newly discovered evidence also entitled him to a new trial, Clark offered the student's subsequent testimony in a parallel civil case the student and his family brought against Clark. The student testified he had not been fully truthful in the criminal case and described other occasions when Clark allegedly touched him inappropriately. Clark presented evidence that questioned whether the new allegations could have occurred as the student testified, which, coupled with the student's admission he was not fully truthful, called into doubt the student's credibility.

---

[1]Mr. Robertson unexpectedly passed away in April 2013 during the PCR proceeding.

The PCR court found Clark was entitled to a new trial based on both the ineffective-assistance claims and the newly discovered evidence. The State did not appeal the PCR ruling and declined to prosecute Clark a second time. The charges against Clark were dismissed in July 2016, over six years after he was convicted.

Following his successful PCR action, Clark brought a legal malpractice action to recover money damages. Because Robertson was a state employee in the public defender's office, Clark filed the malpractice action against the State of Iowa. *See* Iowa Code § 669.5(2)(*a*) (2019). Clark filed an offensive motion for partial summary judgment, asserting that the breach-of-duty element of his malpractice claim was conclusively established by the PCR ruling under the doctrine of issue preclusion.

In resistance, the State argued the standard used to judge counsel's conduct in the ineffective assistance of counsel context is different than the standard used in the malpractice context. The State then argued even if the elements of issue preclusion were met, there was a lack of mutuality between the two cases because, even though the State was the named defendant in both actions, it served in significantly different capacities. Finally, the State argued even if the State could be considered the same party in both cases, other circumstances counseled against using issue preclusion in this context.

Initially, the district court denied Clark's motion for partial summary judgment on the basis that the standard applied to counsel's performance under a *Strickland*[2] ineffective-assistance-of-counsel analysis is different than the standard of care required to support a legal malpractice claim. The court therefore did not address the State's other arguments. On

---

[2]*Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984).

reconsideration, the district court changed course, concluding the standards for an attorney's conduct are sufficiently similar in both contexts to amount to the same issue under the first prong of issue preclusion. Because the State did not contest the remaining issue preclusion elements, the district court found all elements satisfied.

The district court then addressed, and rejected, the State's argument that its status as defendant in the malpractice action was different from its status as defendant in the PCR action such that there was a lack of mutuality of parties. The district court concluded that the State, through the Johnson County Attorney's office, controlled the strategy in defending against the ineffective-assistance claims in the PCR action, and the State, through the attorney general's office, likewise controls the strategy in defending its employee's actions in this malpractice action. The district court concluded "the State of Iowa as named in the postconviction proceeding and the State of Iowa as named in the legal malpractice proceeding presently are identical."

The district court granted Clark's motion for partial summary judgment, finding the element of breach of duty for Clark's malpractice claim was conclusively established by the prior PCR ruling and leaving causation and damages to be decided by the jury.

We granted the State's application for interlocutory appeal and retained the appeal.

## II. Standard of Review.

We review the district court's grant of partial summary judgment for errors at law. *Emps. Mut. Cas. Co. v. Van Haaften*, 815 N.W.2d 17, 22 (Iowa 2012). While we have reviewed application of issue preclusion in a particular case for an abuse of the district court's discretion, *see Fischer v. City of Sioux City*, 654 N.W.2d 544, 550 (Iowa 2002) (district court

abused its discretion in allowing party to rely on issue preclusion not pleaded and first raised one week before trial); *Casey v. Koos*, 323 N.W.2d 193, 197 (Iowa 1982) (district court should decide in the first instance whether to apply offensive issue preclusion following completion of appeal process for prior proceeding), the determination of "[w]hether the elements of issue preclusion are satisfied is a question of law," *Emps. Mut. Cas. Co.*, 815 N.W.2d at 22 (quoting *Grant v. Iowa Dep't of Human Servs.*, 722 N.W.2d 169, 173 (Iowa 2006)); *see also Grant*, 722 N.W.2d at 173 ("[W]e are not bound by the agency's decision [on whether issue preclusion elements were met], and may substitute our own interpretation of the law for the agency's.").

Here, the State challenges the district court's legal conclusions that the elements of issue preclusion were met and that mutuality was satisfied, so our review is for legal error. *See Comes v. Microsoft Corp.*, 709 N.W.2d 114, 117 (Iowa 2006) (reviewing for legal error a challenge to district court's application of incorrect legal standard related to issue preclusion); *cf. Stender v. Blessum*, 897 N.W.2d 491, 501 (Iowa 2017) (holding a district court necessarily abuses its discretion if it misapplies the law).

## III. Analysis.

To recover for legal malpractice, Clark must prove:

> (1) the existence of an attorney–client relationship between the defendant and plaintiff giving rise to a duty; (2) the attorney, by either an act or a failure to act, breached that duty; (3) this breach proximately caused injury to the plaintiff; and (4) the plaintiff sustained actual injury, loss, or damage.

*Kraklio v. Simmons*, 909 N.W.2d 427, 434 (Iowa 2018) (quoting *Huber v. Watson*, 568 N.W.2d 787, 790 (Iowa 1997)). In Iowa, a criminal defendant is not required to prove actual innocence as a prerequisite to a legal

malpractice claim against his former criminal attorney.[3]  *See Barker v. Capotosto*, 875 N.W.2d 157, 168 (Iowa 2016).  The defendant is, however, required to obtain judicial relief related to the purported malpractice before pursuing a malpractice claim.  *See Kraklio*, 909 N.W.2d at 439 (allowing defendant to bring malpractice action based on ineffective assistance related to sentencing proceedings only after first showing "relief from the duration of his supervised probation"); *Trobaugh v. Sondag*, 668 N.W.2d 577, 583 (Iowa 2003) (adopting "approach that requires a defendant to achieve relief from a conviction before advancing a legal malpractice action" premised on conduct that resulted in an avoidable conviction). When the defendant is represented by a court-appointed attorney, as here, this prerequisite is statutory.  *See* Iowa Code § 815.10(6).[4]  Having met this prerequisite, Clark brought the instant legal malpractice action.

Clark seeks to short-circuit the malpractice trial by using his successful ineffective-assistance claim to establish the duty and breach elements of the malpractice claim as a matter of law through issue preclusion (or collateral estoppel).  Issue preclusion prevents parties from relitigating issues already raised and resolved in a prior action.  *Emps. Mut. Cas. Co.*, 815 N.W.2d at 22.

> The doctrine "serves a dual purpose: to protect litigants from 'the "vexation of relitigating identical issues with identical

---

[3]A malpractice claim related to representation of a client in a criminal matter is sometimes referred to as a "criminal malpractice" claim.  *See Barker v. Capotosto*, 875 N.W.2d 157, 161 n.2 (Iowa 2016).

[4]Section 815.10(6) states,

> An attorney appointed under this section is not liable to a person represented by the attorney for damages as a result of a conviction in a criminal case unless the court determines in a postconviction proceeding or on direct appeal that the person's conviction resulted from ineffective assistance of counsel, and the ineffective assistance of counsel is the proximate cause of the damage.

Iowa Code § 815.10(6).

> parties or those persons with a significant connected interest to the prior litigation," ' and to further 'the interest of judicial economy and efficiency by preventing unnecessary litigation.' "

*Id.* (quoting *Winnebago Indus., Inc. v. Haverly*, 727 N.W.2d 567, 571–72 (Iowa 2006)). Issue preclusion also promotes public faith in the judicial system by avoiding "two authoritative but conflicting answers being given to the very same question." *Id.* (quoting *Grant*, 722 N.W.2d at 178).

Issue preclusion may be used defensively as a shield by "a stranger to the judgment, ordinarily the defendant in the second action, . . . [to] conclusively establish[] in his favor an issue which he must prove as an element of his defense." *Hunter v. City of Des Moines*, 300 N.W.2d 121, 123 (Iowa 1981) (quoting *Goolsby v. Derby*, 189 N.W.2d 909, 913 (Iowa 1971)). It may also "be used offensively as a sword by a new plaintiff against a defendant who was a party to the former litigation." *Dettmann v. Kruckenberg*, 613 N.W.2d 238, 244 (Iowa 2000) (en banc); *see also Emps. Mut. Cas. Co.*, 815 N.W.2d at 22 (recognizing same use of offensive issue preclusion).

While we no longer require mutuality between the parties, we generally restrict its use only against a party, or one in privity with a party, to the prior suit.[5] *See Hunter*, 300 N.W.2d at 126 ("[T]he absence of

---

[5]Historically, issue preclusion was limited to subsequent actions between the same parties, or mutuality of estoppel. *See Hunter*, 300 N.W.2d at 123; *see also Harris v. Jones*, 471 N.W.2d 818, 820 (Iowa 1991) ("This doctrine [of mutuality] held that neither party to an action could use a prior judgment to estop the other unless both were bound by the judgment."). While we have said we no longer require mutuality or privity, that just means we have come to allow strangers to the prior proceeding to use issue preclusion *against* a party, or one in privity with that party, who has already litigated the same issue in a prior proceeding. *See Harris*, 471 N.W.2d at 820 (recognizing the mutuality requirement "failed to recognize 'the obvious difference in position between a party who has never litigated an issue and one who has fully litigated and lost' " (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327, 99 S. Ct. 645, 649 (1979))). We nonetheless remain mindful "that it is a due process violation for a litigant to be bound by a judgment when the litigant was not a party or a privy in the first action and therefore never had an opportunity to be heard." *Id.* "Thus, . . . issue preclusion should be applied

mutuality will no longer invariably bar the offensive application of issue preclusion . . . if it is determined that *the party sought to be precluded was afforded a full and fair opportunity to litigate* the issue in the action relied upon . . . ." (emphasis added)); *see also Soults Farms, Inc. v. Schafer*, 797 N.W.2d 92, 104 (Iowa 2011) ("When used in an offensive manner, the plaintiff in the second action relies upon a *former judgment against the defendant* to establish an element of his or her claim . . . irrespective of the parties' mutuality or privity." (emphasis added) (citation omitted)). As with defensive use of issue preclusion, privity for these purposes exists when

> the party against whom issue preclusion is invoked was "so connected in interest with one of the parties in the former action as to have had a full and fair opportunity to litigate the relevant claim or issue and be properly bound by its resolution."

*Dettmann*, 613 N.W.2d at 244 (quoting *Brown v. Kassouf*, 558 N.W.2d 161, 163 (Iowa 1997)).

> A party must establish four elements to employ issue preclusion:

> (1) the issue concluded must be identical; (2) the issue must have been raised and litigated in the prior action; (3) the issue must have been material and relevant to the disposition of the prior action; and (4) the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.[6]

---

only when the party against whom preclusion is asserted had a full and fair opportunity to litigate." *Id.*

[6]The State argues under this last element that the ineffective-assistance claim was not "necessary and essential" to the PCR court's order because it also granted a new trial based on newly discovered evidence. But the State failed to make this argument below. As the district court noted in its order on reconsideration, "the remaining three factors . . . were not controverted by the State." Contrary to the State's assertion that the district court implicitly considered and rejected the argument when it found the remaining elements met, the district court could not have implicitly rejected an argument the State never made. The issue was therefore not even minimally preserved, *cf. 33 Carpenters Constr., Inc. v. State Farm Life & Cas. Co.*, 939 N.W.2d 69, 76 (Iowa 2020) ("assum[ing] without deciding that error was minimally preserved" where district court impliedly

*Hunter,* 300 N.W.2d at 123. Even if the defendant was a party to the prior litigation, offensive use of issue preclusion is applied "more restrictively and cautiously" than when it is used defensively because there are less reasons justifying its offensive use than its defensive use. *Winger v. CM Holdings, L.L.C.,* 881 N.W.2d 433, 451 (Iowa 2016) (quoting *Gardner v. Hartford Ins. Accident & Indem. Co.,* 659 N.W.2d 198, 203 (Iowa 2003)); *see also Hunter,* 300 N.W.2d at 124 (explaining "offensive use of collateral estoppel does not promote judicial economy in the same manner as defensive use does," and offensive use may be unfair to a defendant who lacked the same incentive to litigate the first action or who may be afforded more procedural opportunities in a second proceeding that were unavailable in the first, which may cause a different outcome (quoting *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 329, 99 S. Ct. 645, 650 (1979))). We therefore consider two additional factors before issue preclusion can be used offensively:

> (1) whether the opposing party in the earlier action was afforded a full and fair opportunity to litigate the issues . . . , and (2) whether any other circumstances are present that would justify granting the party resisting issue preclusion occasion to relitigate the issues.

*Winger,* 881 N.W.2d at 451 (quoting *Emps. Mut. Cas. Co.,* 815 N.W.2d at 22) (holding plaintiff in wrongful death action against landlord could not use city housing board's citation against landlord regarding railing height to establish landlord's negligence through offensive issue preclusion because landlord lacked sufficient incentive to challenge city finding, which only subjected landlord to $1090 fine).

---

rejected argument made by party), and we do not address it, *see State v. Bynum,* 937 N.W.2d 319, 324 (Iowa 2020).

Here, the district court concluded that the same parties—Clark and the State—were involved in both the ineffective-assistance claim and the legal malpractice claim, the four underlying elements for issue preclusion were met, and no additional considerations precluded use of the doctrine. We start out analysis by reviewing the use of issue preclusion in the unique context of a criminal malpractice claim following a successful ineffective-assistance claim.

Resolution of this interlocutory appeal centers on the offensive use of issue preclusion in a legal malpractice case brought by a criminal defendant against his public defender trial attorney after obtaining relief from his conviction based on ineffective assistance of counsel. In the reverse situation, criminal defense attorneys may use their client's unsuccessful ineffective-assistance claim to bar a subsequent claim for malpractice, a defensive use of issue preclusion. *See Hall v. Barrett*, 412 N.W.2d 648, 650–51 (Iowa Ct. App. 1987) (affirming summary judgment in favor of criminal defense attorney).[7] This is because the criminal

---

[7]The same is true in many other jurisdictions. *See, e.g.*, *Shaw v. State*, 816 P.2d 1358, 1361 (Alaska 1991) ("If the defendant was denied post-conviction relief, the legal principle of collateral estoppel would serve to eliminate any frivolous malpractice claim."); *Sanders v. Malik*, 711 A.2d 32, 34 (Del. 1998) ("It . . . was appropriate in this case for the Superior Court to have applied the doctrine of collateral estoppel if the issue of [the defense attorney's] competency actually was litigated and decided in [the defendant's] criminal proceedings. . . . Under the circumstances, we agree with the Superior Court's holding that [the defendant's] civil lawsuit was barred by the doctrine of collateral estoppel." (footnote omitted)); *Belford v. McHale Cook & Welch*, 648 N.E.2d 1241, 1246 (Ind. Ct. App. 1995) ("The issue of ineffective assistance of counsel was decided unfavorably to [Belford] and affirmed in a decision by the Seventh Circuit Court of Appeals. As a matter of law, the trial court properly granted summary judgment in favor of [the attorney and the law firm] on [Belford's] claim for malpractice relating to the investigation, guilty plea, and sentence." (citation omitted)); *Brewer v. Hagemann*, 771 A.2d 1030, 1033 (Me. 2001) (applying collateral estoppel to bar a malpractice claim filed after a defendant was denied his claims for postconviction relief); *Gibson v. Trant*, 58 S.W.3d 103, 115 (Tenn. 2001) ("[A] criminal defendant who believes he has been wrongly convicted should seek redress through the post-conviction process, not through a legal malpractice action. Collateral estoppel provides that once he does seek such relief, and it is denied, he cannot thereafter bring a civil claim based on the same allegations brought before the post-conviction court."). *But see Rantz v. Kaufman*, 109 P.3d 132, 140, 142

defendant, the party against whom issue preclusion is used, is a party to both proceedings and has the same opportunity and incentive to litigate the attorney's conduct for purposes of seeking to overturn a conviction through an ineffective-assistance-of-counsel claim as for seeking monetary damages through a malpractice claim. *Id.* at 651.

When the situation is reversed, as it is here, and the criminal defendant successfully challenges his conviction based on ineffective assistance of counsel, the only courts of which we are aware to have addressed the issue have rejected offensive use of issue preclusion by the criminal-defendant-turned-malpractice plaintiff. *See, e.g., Stewart v. Elliott*, 239 P.3d 1236, 1239–42 (Alaska 2010); *Noske v. Friedberg*, 670 N.W.2d 740, 746 (Minn. 2003) (en banc); *Stevens v. Horton*, 984 P.2d 868, 872–73 (Or. Ct. App. 1999). The primary reasoning is that an ineffective-assistance claim is between the criminal defendant and the state, acting in its capacity as prosecutor, so issue preclusion does not apply as against the attorney who was not a party to the PCR action. The Restatement (Third) of the Law Governing Lawyers takes the same position, recognizing that issue preclusion may be used defensively in a criminal malpractice action to prevent a criminal defendant from relitigating issues decided adversely in a PCR action "even though the lawyer sued was not a party to that proceeding *and is hence not bound by any decision favorable to the defendant.*" Restatement (Third) of the L. Governing Laws. § 53, at 392 (Am. L. Inst. 2000) (emphasis added).[8]

---

(Colo. 2005) (en banc) ("Because prior postconviction relief is not a requirement to maintain suit, the denial of Rantz's . . . motion for ineffective assistance of counsel alone does not prevent Rantz from stating a malpractice claim.").

[8]We have applied the Restatement (Third) section 53 position in other contexts. *See Barker*, 875 N.W.2d at 165–68 (recognizing division among jurisdictions and "find[ing] the approach taken by the Restatement [section 53] and like-minded jurisdictions to be

In *Stevens v. Horton*, the Oregon Court of Appeals rejected offensive use of issue preclusion in a subsequent criminal malpractice action because the state as the opposing party in the PCR proceeding was not in privity with the opposing parties in the malpractice action, the criminal defense attorneys. 984 P.2d at 873. But the court did not limit its analysis to a lack of privity, recognizing that, "in a pragmatic sense, [the malpractice] plaintiff is correct that [his criminal defense attorney's] testimony was central to the state's defense in the post-conviction proceeding." *Id.* Nonetheless, it identified two fundamental reasons for not holding the criminal defense attorney to the PCR court's judgment. First, the state had no duty in the PCR action to represent the attorney–defendants, "and, accordingly, defendants lacked any ability to direct or control the state's defense of [the criminal attorney's] conduct." *Id.* (noting counsel had no ability to call expert witnesses or cross-examine the PCR plaintiff's witnesses). "Second, because the state's interests in the post-conviction proceeding differed dramatically from defendants' interests in the malpractice proceeding, the state cannot be said to have 'represented' defendants' 'interests.'" *Id.* (noting the differences between the state's interest in protecting a criminal conviction that can be retried and the defense attorneys' personal interest in their professional and financial future).

Although Alaska applies a more stringent privity test than did Oregon in *Stevens*, the Alaska Supreme Court relied on similar reasoning in *Stewart v. Elliott*. The Alaska Supreme Court noted that the defense attorney's "limited participation in post-conviction relief certainly did not allow him sufficient control to establish privity." *Stewart*, 239 P.3d at

---

persuasive" in requiring judicial relief from a conviction, but not proof of actual innocence, as a prerequisite to a malpractice action by a criminal defendant).

1241. Likewise, even though he submitted an affidavit that gave "him some opportunity to explain his actions, it did not give him the opportunity to more broadly control the litigation." *Id.* at 1242. The court supported its conclusion by analogy to a recent case where it "held that a decision against a state social service agency did not bind the state-employed social worker when she was subsequently sued in her individual capacity." *Id.* (discussing *State v. Doherty*, 167 P.3d 64 (Alaska 2007)). The court concluded,

> [A]s a matter of sound policy, this is how it should be. For when the government enters the courthouse in order to prosecute criminal conduct or protect a child in need of aid, it should not be distracted from its purpose by the personal interests of its employees.

*Id.* (quoting *Doherty*, 167 P.3d at 72).

Clark has identified, and we have found, no case allowing the offensive use of a prior successful ineffective-assistance claim to preclusively establish the breach element in a subsequent criminal malpractice action. Clark does not even dispute this is the proper outcome when the criminal defendant is represented by a private attorney. Instead, he argues that a publicly-employed attorney sued under a tort claims act that substitutes the state for the public employee as the defendant in a malpractice action is different than the private attorney context because the state is the named defendant in both the PCR action and the malpractice action. Clark's attempt to explain away the significantly different position the state holds in each of those cases is unpersuasive.

The dramatically different interests between the state in defending a conviction in a PCR proceeding and a defense attorney's interests in defending against liability in a criminal malpractice action that support the Oregon and Alaska courts' decisions exist even when the attorney is a

state public defender employed by the state. Critically, the state acting as prosecutor in defending against an ineffective-assistance claim owes no duty to the criminal defendant's counsel just because he is a public defender. In an analogous situation, findings in a criminal suppression hearing related to police officer misdeeds cannot be used preclusively in the criminal defendant's subsequent civil action against the police officer because the officer and his government employer had different interests from, and lacked privity with, the state in criminal proceedings. *See, e.g., Turpin v. Cnty. of Rock*, 262 F.3d 779, 782–83 (8th Cir. 2001) ("Collateral estoppel [under Nebraska state law] cannot be used against the officers [or their county employer] in our case, as the officers were neither parties nor in privity with the State in the criminal action and did not have a full and fair opportunity to litigate the issues in the criminal action."); *Duncan v. Clements*, 744 F.2d 48, 51–52 (8th Cir. 1984) (applying Missouri law and holding police officers were not "virtually represented" by the state in a suppression hearing because the interests of the state in the criminal proceeding differed from officers' interest in subsequent civil suit despite the officers' involvement in suppression hearing).

The Restatement (Second) of Judgments explains, "A party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity." Restatement (Second) of Judgments § 36(2), at 359 (Am. L. Inst. 1982). "The rule that a person appearing in litigation in one capacity is not, generally speaking, affected thereby in another legal capacity serves to safeguard the integrity of such representative functions." *Id.* cmt. *a.* "With respect to issue preclusion, a party appearing in successive actions . . . is not precluded where the capacities in which he participated are different."

*Id.* at 360. The Restatement (Second) goes on to address this rule in the context of government agencies with distinct responsibilities, explaining,

> If the second action involves an agency or official whose functions and responsibilities are so distinct from those of the agency or official in the first action that applying preclusion would interfere with the proper allocation of authority between them, the earlier judgment should not be given preclusive effect in the second action.

*Id.* cmt. *f* at 364.

This reasoning applies to the State's involvement in the cases here. No one would seriously suggest that the State's relationship with Clark, or his attorney, at the criminal trial stage would be different had he been represented by a private attorney instead of the public defender's office. During the trial, those interests were clearly antagonistic, with the publicly-employed defense attorney working against conviction while the State worked for conviction. That relationship did not magically change when Clark sought relief from his conviction based on ineffective assistance of counsel. In the PCR action, the State continued in its prosecutorial role to represent the citizens of Iowa with the responsibility of upholding the state's laws and, ultimately, seeing that justice is done. As the criminal defense attorney's employer in the malpractice action, the State stepped into an entirely different capacity, one that has the responsibility of preserving the public fisc and defending its employee's actions and reputation, as well as the reputation of its public defender's office. While the unique nature of an ineffective-assistance claim necessarily puts the State as prosecutor in the position of defending the criminal defense attorney's conduct, that is no less true when the attorney is privately retained. Yet, as in *Stewart* and *Stevens*, the State cannot be said to be in privity with that attorney, even if he happens to be a public defender.

The Johnson County Attorney's office in this case was not expected to defend the PCR action by placing the risk to the public fisc from a malpractice suit and Robertson's and the state public defender's office's reputational interests at the forefront of its strategy. Any such expectation would endanger the integrity of the Johnson County Attorney's office and its prosecutorial obligations to the citizens of Iowa. The State's ultimate responsibility is to see that justice is done, not to defend its conviction at all costs. When PCR relief is granted, the State often elects not to retry the defendant on the same charges, even though a second conviction would eliminate a possible malpractice claim against the defense attorney. For example, the State may conclude that if the defendant has already served substantial prison time, justice has been done and the additional expense of a lengthy retrial does not best serve the State's prosecutorial interests. Forcing the State to nonetheless retry the defendant just to avoid issue preclusion on a potential malpractice claim is not only an unwise and impractical public policy, it also imposes incompatible obligations on the State.

When the State prosecutor "enters the courthouse in order to prosecute criminal conduct . . . , it should not be distracted from its purpose by the personal interests of [state] employees" who represented its adversary. *Stewart*, 239 P.3d at 1242 (quoting *Doherty*, 167 P.3d at 72). Yet, the district court's ruling imposed just such a duty when it stated: "Any manner in which the State could prove that defense counsel had done his job to the appropriate professional level of competence should have been set forth and argued at the post-conviction relief trial." Had Clark been represented by a private attorney, the State would not be expected to set forth every manner in which that attorney acted competently. Rather, it would have exercised its discretion in defending

the ineffective-assistance claims under the strategy that best served the citizens of Iowa—a strategy that may or may not have included defending each of the attorney's actions.

The Minnesota Supreme Court has also held that a finding of ineffective assistance of counsel in a habeas case does not preclude the attorney from arguing he was not negligent in the criminal defendant's subsequent malpractice action. *See Noske*, 670 N.W.2d at 746 (reaching merits of argument despite procedural challenges). The court relied on the reasoning from a prior decision where it explained:

> Review of the issue of ineffectiveness is not to pass judgment on the abilities of a defense lawyer. Rather, the overall concern is limited to whether our adversary system of criminal justice has functioned properly. The narrow issue is not whether defense counsel was effective in the assistance rendered but rather whether defendant received the effective assistance required to assure him a fair trial and the integrity of our adversary system of justice.

*Id.* (quoting *White v. State,* 248 N.W.2d 281, 285 (Minn. 1976) (per curiam)). Likewise, adjudication of ineffective-assistance claims under Iowa law can turn on considerations beyond whether defense counsel's actions fell below an acceptable level of competence. *See State v. Clay*, 824 N.W.2d 488, 504 (Iowa 2012) (Mansfield, J., concurring) ("I think a fair assessment of our recent precedents is that they recognize a rather broad concept of what constitutes a failure to perform an essential duty for ineffective-assistance-of-counsel purposes."); *see also* Jon M. Woodruff, Note, *Plain Error by Another Name: Are Ineffective Assistance of Counsel Claims A Suitable Alternative to Plain Error Review in Iowa?*, 102 Iowa L. Rev. 1811, 1825 (2017) (describing *Rhoades v. State*, 848 N.W.2d 22 (Iowa 2014), as what "may be the clearest example of the Iowa Supreme Court's willingness to find defense counsel ineffective under circumstances where the attorney's conduct appeared to be well within the

normal bounds of attorney representation" based on established precedent and legitimate trial strategy considerations supporting a guilty plea as the defendant's best option); *id.* at 1826–28 (describing *State v. Ross*, 845 N.W.2d 692 (Iowa 2014), and noting "it is difficult to question the conduct of Ross's trial counsel" who lacked the benefit of caselaw nonexistent at the time of trial but was nevertheless found to be ineffective).

While the Minnesota court's reasoning does not directly address the privity requirement of issue preclusion, it does shed light on whether an attorney defending against a malpractice claim had a full and fair opportunity to litigate his actions in the prior PCR proceeding, *see Dettmann*, 613 N.W.2d at 244 (privity requires the party to have had a full and fair opportunity to litigate the issue in the first proceeding), where ineffective-assistance findings do not always track directly from counsel's actions. It also helps explain why a finding that a criminal defendant is entitled to relief from a conviction based on ineffective assistance of counsel does not *a fortiori* establish that counsel breached his duties for purposes of a malpractice action.

Like many other jurisdictions we require postconviction relief as a necessary prerequisite to a criminal legal malpractice claim, *see Kraklio*, 909 N.W.2d at 439; *see also Stewart*, 239 P.3d at 1240, but like Alaska, "we have never suggested that it takes the place of establishing the elements of negligence," *Stewart*, 239 P.3d at 1240; *see also White*, 248 N.W.2d at 285 (holding that a finding of ineffective assistance of counsel does not necessarily "entail the success of a malpractice action against the defense attorney"); *Bailey v. Tucker*, 621 A.2d 108, 114–15, 115 n.14 (Pa. 1993) (requiring criminal defendant to obtain posttrial relief dependent on attorney error before bringing a criminal malpractice action and "emphasiz[ing] that a finding of ineffectiveness is not tantamount to a

finding of culpable conduct"); *cf. Hicks v. Nunnery*, 643 N.W.2d 809, 830–31 (Wis. Ct. App. 2002) (holding evidence of attorney's testimony admitting he provided ineffective assistance in PCR proceeding was admissible at subsequent malpractice trial without suggesting it would have preclusive effect). This is true whether or not defense counsel is employed by the State. There is simply no principled basis for treating malpractice claims differently based on the identity of defense counsel's employer.

We conclude the State as defendant in this malpractice action was not the same party, or in privity with a party, in the PCR action. The State in its capacity as the criminal defense attorney's employer lacked a full and fair opportunity to litigate whether the criminal defense attorney breached duties owed to Clark in the PCR action. Given this resolution, we need not address the State's other challenges to Clark's use of issue preclusion.

While we hold that Clark may not use his successful ineffective-assistance-of-counsel claims to preclusively establish the breach elements of his malpractice claims, we reiterate that our holding does not diminish Clark's ability to rely on the same evidence he successfully used before. We merely hold that he cannot rely on the ineffective-assistance findings as a matter of law to avoid even presenting that evidence.

**IV. Conclusion.**

The district court's grant of partial summary judgment is reversed and the case is remanded for further proceedings.

**REVERSED AND REMANDED.**